**LAEVE et al. v. MISSOURI, K. & T. RY. CO. OF TEXAS.**

(Court of Civil Appeals of Texas. March 22, 1911. Supplemental Opinion, May 10, 1911.)

1. RAILROADS (§ 397*)—INJURIES TO PERSON ON TRACK—EVIDENCE—ADMISSIBILITY.

In an action for the death of a trespasser struck by a train, a witness may not testify that no one had ever forbidden him from walking on the track; it not appearing that any rail-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

way employé knew of his walking on it, or that he had ever asked permission so to do.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 397.*]

2. RAILROADS (§ 397*)—INJURIES TO PERSON ON TRACK—EVIDENCE—ADMISSIBILITY.

Where, in an action for the death of a person struck by a train, the evidence showed that the engineer saw what he thought was cinders on the track, and did not realize that it was a person lying on the track until he was so close to it that he could not stop the train, evidence of a rule of the company known to the engineer forbidding the dumping of cinders on the roadbed was inadmissible.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 397.*]

3. RAILROADS (§ 397*)—INJURIES TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE — EVIDENCE.

Where, in an action for the death of a person lying on a track by being struck by a train, the evidence showed that decedent was lying on the track at 3:40 a. m., probably asleep, that he had been in town the day before, and that he was in the habit of drinking when in town, evidence that decedent had been seen intoxicated a day or two before the accident was admissible on the issue of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 397.*]

4. RAILROADS (§ 359*)—TRESPASSERS ON TRACK —WHO ARE.

A person lying at night on a railroad track by the side of a bridge across a stream is a trespasser, and the company does not owe him any duty to keep a lookout for him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1238, 1239; Dec. Dig. § 359.*]

Supplemental Opinion.

5. RAILROADS (§ 376*) — INJURIES TO TRESPASSERS ON TRACK—LIABILITY.

A railroad company on discovering the peril of a trespasser on the track need only exercise ordinary care to avoid injuring him.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1275–1279; Dec. Dig. § 376.*]

Appeal from District Court, Williamson County; C. A. Wilcox, Judge.

Action by Rosa Laeve, on behalf of herself and minor children, against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for defendant, plaintiffs appeal. Affirmed.

W. A. Barlow, for appellants. W. E. Spell and Luther Nickels, for appellee.

JENKINS, J. This suit was instituted by Rosa Vitek, surviving wife of John Vitek, deceased, on behalf of herself and her minor children, she having married Otto Laeve after suit was filed, and before trial he was made a party plaintiff. Verdict and judgment for defendant, and plaintiffs have appealed.

Findings of Fact.

John Vitek, aged about 35 years, lived about ten miles north of Taylor and about five miles north of Circleville, stations on appellee's road. On February 28, 1908, about noon, he left home afoot, going to Taylor. He was last seen in Taylor, so far as is shown by the evidence by Paul Starny, a saloon keeper, who said: "I saw him just about sundown. He came in and ordered a drink, and said he was going home, and left right away. * * * I thought maybe he had been drinking a little." He is shown to have taken two other drinks in Taylor that evening. The next morning at 3:40 he was run over and killed by appellee's passenger train a short distance north of Circleville under the following circumstances, as shown by the testimony of the engineer, who testified as a witness for appellants, no other witness testifying as to the occurrence.

North of Circleville 1,720 feet there is a bridge across San Gabriel creek, 507 feet in length. One thousand and eighty-four feet north of this bridge there is another bridge across Pecan branch 217 feet long. The roadbed is straight and practically level across and between these bridges. When in about 150 feet of the south end of the Pecan branch bridge, the engineer, who was a witness for the plaintiffs, discovered some dark object in the roadbed just north of the bridge. He supposed it was either cinders or creosote ties. Cinders were frequently used in ballasting the road, and the company had been putting creosote ties, which were black, in the roadbed, and, when two or three of them were put in together, they had the appearance of a dark object in the roadbed. The engineer kept a sharp lookout on the object seen by him, and, when he arrived near the south end of the bridge, he discovered that it was a human being lying between the rails, crossways of the track, but not on either rail, with face to the south. He immediately upon making the discovery applied the emergency brake and sand, and did all within his power to stop the train, but did not succeed until he had run over the deceased. It was shown that under the conditions this train was being operated—that is, running on a level road from 20 to 25 miles an hour—from 450 to 500 feet was the shortest distance in which it was possible to stop it, and that it was stopped at that distance. The train had all necessary and the best improved equipments for stopping a train. The engineer did not ring the bell nor blow the whistle. The deceased never moved from the time the engineer first saw him. The bridges and roadbed north of Circleville had been used as a footpath in the daytime by people coming to and going from Circleville, for the reason that it was a nearer route than by the public road, which crossed the railroad at Circleville and recrossed it about 1¾ miles north. Two witnesses testified that they had crossed on these bridges at night, but it is not shown that any railway employé knew of this fact. The railroad company had signs posted at the ends of these bridges warning all persons not to walk on them.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

### Conclusions of Law.

[1] 1. There was no error in refusing to allow the witness Nowlin to testify that no one had ever forbidden him to walk on these bridges. It does not appear that any railway employé knew of his walking on them, and he testified that he had never asked permission to do so.

[2] 2. There was no error in refusing to allow the appellants to prove by the engineer that at the time of the death of John Vitek there was a rule of the company known to him forbidding the dumping of cinders on the roadbed. It would not matter that there was such a rule, if the engineer thought some one had violated it. However, it does not appear that he thought any one had "dumped" cinders on the track, but that the company had put them there as ballast.

[3] 3. There was no error in permitting the witness Teer to testify that he saw the deceased in an intoxicated condition a day or two before his death. It appeared from the evidence that he was in the habit of drinking intoxicants whenever he went to town. The fact that he was lying on the railroad track at 3:40 a. m., probably asleep, is at least some indication that he was drunk, and, if so, he was guilty of contributory negligence. Railway Co. v. Sympkins, 54 Tex. 623, 38 Am. Rep. 632; 1 Thompson on Neg. p. 450.

[4] 4. The court charged the jury as follows: "The deceased, John Vitek, at the time and place where he was killed, was a trespasser upon the track of defendant railway company, and the defendant, under the circumstances, was under no duty to keep a lookout to discover whether persons were on the track at such point." Appellants assign error on this charge. We think that the deceased, under the facts of this case, was a trespasser as a matter of law, and that the court did not err in so instructing the jury. Railway Co. v. Malone, 102 Tex. 269, 115 S. W. 1159. Was it the duty of appellee's servants to keep a lookout to discover deceased's presence on the track? On this point, as to the duty of a railway company to keep a lookout for trespassers, there is an apparent conflict in the decisions, but, when considered in reference to the facts of each case, we think the conflict is more seeming than real. In Railway Co. v. Sympkins, supra, the court said: "We do not assent to the proposition that a railway company may not become liable to one who is run over and injured by reason of the want of watchfulness of its servants, although such person may have been originally a trespasser on its track." With this we are in accord. We think that a railway company "may," but not necessarily does, become liable to a trespasser by reason of its want of watchfulness. In that case it was contended that though the party had gone on the track at a place other than a crossing, and thus become a trespasser, at the time he was run over he

had fallen in a fit, and had become unconscious. To quote further from this line of decisions, it was said in Railway Co. v. Watkins, 88 Tex. 24, 29 S. W. 233: "It is often said that a railroad owes no duty to a trespasser, or one wrongfully on its track, except to refrain from wanton injury to him. This doctrine has never been adopted in this state, but has been expressly repudiated." As thus broadly stated, the proposition is not the law. A railroad company does owe a duty, even to trespassers. What is that duty? It is to exercise reasonable care to avoid injuring them. Does such reasonable care impose the duty of keeping a lookout to discover the presence of such trespassers? That depends upon circumstances. If in a place or under circumstances such as it might reasonably be expected that persons might be found on the track, though they be not licensees, such duty is imposed, otherwise it is not. This was forcibly put by Mr. Justice (now Chief Justice) Brown in the case of Railway Co. v. Malone, 102 Tex. 273, 115 S. W. 1159, as follows: "The facts must be such as would cause an ordinarily prudent person, under similar circumstances, to expect to find people at that place at that time." If there be no reason to expect the presence of persons on the track at a given time and place, it cannot be said that the exercise of reasonable care demands that a lookout be kept to discover the presence of such persons at such time and place. We conclude that under the facts and circumstances of this case the appellee did not owe the deceased any duty to keep a lookout for him on the track.

The court charged in the abstract that upon peril being discovered the duty arises to use ordinary care to avoid inflicting injury, and, as applied to the facts of this case, that if the engineer discovered the presence of deceased on the track and failed to do all in his power to stop the train, and that such failure so to do was negligence, their verdict should be for the plaintiff. Appellants assign error on this charge. No special charge on this subject was requested by appellants. The charge is an incorrect statement of the law, but we do not think that such error demands a reversal of this case, for the reason that the facts did not call for a charge on peril actually discovered. The uncontradicted evidence of the engineer who was appellants' witness is that he did all that could possibly be done to avoid the injury after discovering that the object on the track was a human being. As to whether or not it was negligence in him, after discovering some object on the track, in not sooner ascertaining that the same was a human being, that issue was submitted to the jury under an appropriate charge given at request of appellants.

For another reason we do not think this case should be reversed. The undisputed evidence clearly shows that the contributory

negligence of the deceased was the proximate cause of his death, and under such circumstances, under no proper charge, could the verdict of the jury been other than it was. We think that the court would have been justified in instructing a verdict for the appellee.

Finding no reversible error in the record, the judgment of the trial court herein is affirmed.

Affirmed.

#### Supplemental Opinion.

[5] In the opinion heretofore rendered in this case, referring to the charge of the court as to discovered peril, we said: "The charge is an incorrect statement of the law." We withdraw that criticism. It is true that it has frequently been held that it was not improper to instruct the jury, as was done by the learned trial judge in this case, that if the engineer failed to do all in his power consistent with the safety of the train to avoid the injury after discovering the peril, and such failure was negligence on the part of the engineer, their verdict should be for the plaintiff. But this is not upon the ground that a higher degree than ordinary care is demanded under such circumstances, but that such failure would evince a want of ordinary care, and show a reckless disregard of the welfare of others on the part of such engineer. As was said in Woods v. Railway Co., 188 Mo. 243, 86 S. W. 1086: "Whilst ordinary care is all that the law requires of the defendant in such case, yet what constitutes ordinary care is a question to be determined by the circumstances of the particular case." Except in cases of special relation, as in the case of passengers, or where the doing or failure to do a specific thing is negligence per se, as violating a statute or ordinance of a city, a railway company can be made to respond in damages only when it fails to exercise ordinary care. Railway Co. v. Hodges, 102 Tex. 524, 120 S. W. 849; Railway Co. v. Wallace, 21 Tex. Civ. App. 394, 53 S. W. 78.