GULF, C. & S. F. RY. CO. v. PRAZAK et ux. (No. 5522.)

(Court of Civil Appeals of Texas. Austin. Dec. 17, 1915. Rehearing Denied Jan. 12, 1916.)

1. DEATH ☞68 — ACTIONS FOR DEATH OF CHILD—EVIDENCE.

In an action by parents for damages for the wrongful killing of their minor son, the exclusion of testimony that the son bore the reputation of being a bad and unruly boy is error.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 86, 87; Dec. Dig. ☞68.]

2. APPEAL AND ERROR ☞856—REVIEW—MATTERS TO BE CONSIDERED.

Where material error has been committed and the jury has decided the issues submitted contrary to the testimony, the appellate court cannot affirm the judgment because there was testimony which might have supported a finding for the successful party upon another issue which was not submitted to the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3406–3424, 3429–3434; Dec. Dig. ☞856.]

3. RAILROADS ☞358—INJURIES TO PERSONS ON TRACKS—TRESPASSER.

A minor child, who spent the night on a railroad right of way in company with and at the invitation of a watchman at an embankment which had begun to wash out, is not a trespasser, but a licensee.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1236, 1237; Dec. Dig. ☞358.]

4. RAILROADS ☞395—INJURIES TO PERSONS ON TRACKS—ACTIONS—BURDEN OF PROOF.

Where plaintiffs averred that their minor son was asleep at a point dangerously near defendant's tracks when killed, they had the burden of proving that he was not guilty of contributory negligence in being in that place of danger when struck.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1339, 1340; Dec. Dig. ☞395.]

5. RAILROADS ☞400—INJURIES TO PERSONS ON TRACKS — CONTRIBUTORY NEGLIGENCE — JURY QUESTION.

In an action for the death of a minor child killed while on a railroad company's right of way, the question whether he was guilty of contributory negligence held for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. ☞400.]

6. RAILROADS ☞390—INJURY TO PERSONS ON TRACKS—LAST CLEAR CHANCE DOCTRINE.

Notwithstanding the contributory negligence of deceased in taking a position of danger near the tracks of a railroad company, recovery will not be denied where those in charge of the train saw him in time to have avoided the injury by the exercise of reasonable care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1324, 1325; Dec. Dig. ☞390.]

7. RAILROADS ☞358—INJURIES TO PERSONS ON TRACKS—DUTY OF CARE.

Employés in charge of a railroad company, though they knew that the tracks were used in the daytime by persons living in the vicinity and the train was approaching a crossing and town, are not obliged, in the nighttime or very early morning, to maintain a lookout for persons who may be on the tracks.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1236, 1237; Dec. Dig. ☞358.]

8. RAILROADS ☞398—INJURIES TO PERSONS ON TRACKS—ACTIONS—EVIDENCE.

Evidence held sufficient to show that those in charge of a train which struck plaintiff's minor child were guilty of negligence after discovering his position of peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. ☞398.]

9. DEATH ☞95 — ACTIONS FOR WRONGFUL DEATH—DAMAGES.

For the wrongful killing of a minor child, parents' damages should not exceed a sum equal to the value of the services of the child during minority, less an allowance for expense of maintenance and education.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108, 109, 111–115, 120; Dec. Dig. ☞95.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Burleson County; Ed R. Sinks, Judge.

Action by Rudolph Prazak and wife against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

See, also, 170 S. W. 859.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. W. M. Hilliard and W. W. Rankin, both of Caldwell, for appellees.

KEY, C. J. Rudolph Prazak and his wife brought this suit against the railway company, and recovered a verdict and judgment for $1,500 for the alleged wrongful killing of their minor son, Ramond Prazak, and the railway company has appealed.

[1] Without discussing in detail the various assignments of error, we have concluded that the case should be reversed because of the error committed by the trial court in excluding the evidence of certain witnesses offered by appellant, to the effect that they knew the reputation of Ramond Prazak, and that he had the reputation of being a bad and unruly boy, and because we are of opinion that the verdict of the jury is against the manifest weight and great preponderance of the testimony, and therefore the trial court should have granted a new trial. In reference to the excluded testimony the rule is stated as follows in 13 Cyc. p. 354:

"In an action for death by wrongful act evidence is usually admissible as to whether deceased was careful and competent, and also in regard to his reputation for industry and sobriety, his attitude towards his family in respect to provision for their support and kindly treatment, and, where deceased was a minor, as to his ability and willingness to render services or aid in the support of his family."

In cases of this kind the measure of damages is limited to the pecuniary benefit which the plaintiffs would have derived from the services of the deceased child if he had not been killed; and, in determining what would have been the probable amount of such pecuniary benefit, it is proper for the proof to show, and for the jury to consider, the character and habits of the deceased child. The testimony given by the plaintiffs tended to show that the deceased was an industrious and obedient son; but as they were directly interested in the result of the suit, the jury was not compelled to accept their testimony as true; and, if appellant had been permitted, as it offered to do, to prove by six witnesses that the deceased had the reputation of being a bad and unruly boy, the jury might have fixed the amount of damages at less than the amount awarded by the verdict. The rule of law which admits such testimony was considered and held applicable by this court in Standlee v. Railway, 25 Tex. Civ. App. 340, 60 S. W. 781. We think the court ruled correctly in excluding evidence offered for the purpose of showing that the deceased had been charged with theft; but, if appellant had offered to prove his general reputation for honesty, industry, sobriety, etc., we think such proof should have been admitted, and the other evidence which was excluded was admissible upon the same principle. It did not relate to specific acts, but involved the question of general reputation as to matters tending to throw light upon the pecuniary value of the deceased, resulting in the main, if not entirely, from the services he would have rendered during his minority.

[2] Turning now to the other question upon which we reverse the case, we find that, while many other grounds of negligence were charged in the plaintiffs' petition, the court submitted the case to the jury, in so far as liability was concerned, upon three issues only, and these were: (1) The alleged negligence of appellant's employés who were operating the train in failing to keep a proper lookout at the place where the deceased was injured; (2) whether or not the deceased was guilty of contributory negligence; and (3) the question of discovered peril, and the failure of the employés in charge of the train to use proper care and diligence to avoid injuring the deceased, after he was discovered in a perilous situation. We refer to the fact that the court did not submit to the jury any question of negligence charged against appellant, except those above referred to, because of the fact that counsel for appellees contend in their brief that the verdict should not be set aside because it was alleged in the plaintiffs' petition (and they contend that the proof shows) that Aubrey Broadwell, another employé of appellant, who however was not engaged in operating the train, was guilty of negligence, and that the employés who were operating the train, were guilty of negligence in failing to give certain signals. As the issues of negligence in the respects referred to were not submitted to the jury, the argument referred to is unavailing. If material error has been committed in the trial of a case, the appellate court has no right to affirm the judgment, if the jury has decided the issues submitted to them contrary to the testimony, merely because there was testimony submitted which might have supported a finding for the successful party upon another issue which was not submitted to the jury. In other words, when a recovery is sought upon different grounds of negligence, and the court submits to the jury some, but not all, of the acts of negligence alleged, and the proof fails to sustain the verdict upon the issues submitted, there is no rule of law that will permit an appellate court to pass upon the question of negligence not submitted to the jury, and substitute its verdict thereon for what might have been the verdict of the jury. To pursue that course would be to deprive litigants of the right of trial by jury, which is guaranteed by the Constitution. Hence it follows that in con-

sidering the question as to whether or not the verdict is supported by the testimony we are limited to the evidence relevant to the issues that were submitted to the jury, and cannot consider any testimony which may tend to show negligence in other respects. So, without making any elaborate argument, we deem it proper to state the salient facts and some of our reasons for concluding that the verdict should be set aside.

[3] On account of excessive rains during the month of December, 1913, appellant's section foreman in charge of its railroad track at the place where deceased was injured employed Aubrey Broadwell to keep watch at night at an embankment upon which the track was located, and where the embankment had begun to slough off or wash out. Broadwell was 16 years of age, and the undisputed evidence shows that on the night of December 16th, the deceased, Ramond Prazak, went with Broadwell to the place referred to and stayed there with him until he was struck and injured by a train which passed that point somewhere near 5 o'clock the next morning. While the proof shows that the deceased was not employed by any one authorized to act for appellant, there was testimony which would warrant a finding that he accompanied and stayed with the Broadwell boy that night at the solicitation and by the permission of the latter, and, in view of that testimony, we are of opinion that the deceased was not a trespasser, but a licensee, upon appellant's right of way.

[4, 5] But, notwithstanding that fact, inasmuch as it was alleged in appellees' petition that at the time of his injury the deceased was asleep at a point dangerously near appellant's track, the burden was upon appellees to show that he was not guilty of negligence in being in that place of danger at the time he was struck by the passing train. That point was decided in Railway Co. v. Shiflet, 94 Tex. 131, 58 S. W. 945; Id., 98 Tex. 326, 83 S. W. 677. However, we do not agree with counsel for appellant in the contention that this case is entirely analogous to the Shiflet Case, where it was held that a boy 11 years of age was guilty of contributory negligence, as matter of law, because of the fact that he was upon the railroad track at the time he was struck and killed in the nighttime, and that it was immaterial that the track had long been used by the public, and that the boy may have been asleep. That decision was based upon the proposition that an average boy, 11 years of age, was bound to know that if he is upon a railroad track when a train passes he will necessarily be injured; but in this case it was neither alleged nor proved that the deceased was on the track when he was struck by the train. Appellees alleged in their petition, and the appellant admitted in its answer, that at the time referred to the deceased was dangerously near the track. A boy may locate himself at a place dangerously near a railroad track without being aware of the fact that he is so near the track that he may be struck by a passing train. In this case the witness Broadwell testified that when he last saw the deceased he was sitting on an inverted bucket near the end of one of the cross-ties of the railroad track, and further stated that during the night, while two other trains passed, the deceased had been sitting at or near the same place, and was not struck by either of the two trains referred to.

Hence we hold that the question of contributory negligence was a question of fact, to be submitted to the jury, and that it was proper, as ruled by the trial court, for the jury to consider the age and probable amount of discretion of the deceased in determining whether or not he was guilty of contributory negligence. It is true that the Broadwell boy, who was the only witness that testified concerning the matter, stated that at the time the last train passed the deceased may have been sitting nearer than he was when the other two trains passed, and also stated that he had warned the deceased several times that night in reference to passing trains, and when he heard the train approaching requested the deceased to go with him down the track, where he went for the purpose of ascertaining whether or not the approaching train desired any signal from him, and stated to the deceased that if he remained there he might get hurt, and the deceased replied that the train would look good cutting him up there, or something to that effect. Considering the fact that the burden of proof rested upon appellees to show that the deceased was not guilty of negligence in being in a place of danger at the time he was injured, and conceding that the testimony just referred to tends strongly to show that he was guilty of such negligence, still, in view of his age and probable lack of sound discretion, and of the fact that while sitting near the same place two other trains had passed without injuring him, we are not prepared to say that if the jury reached the conclusion that he was not guilty of contributory negligence, such conclusion was unsupported by the testimony.

[6] However, the verdict of the jury is general, and they may have found that the deceased was guilty of contributory negligence, but that appellant was liable because of the fact that the employés running the train discovered the perilous position of the deceased in time to have stopped the train and prevented the injury, in which event contributory negligence on the part of the deceased would not prevent a recovery.

[7, 8] Turning now to the questions of negligence on the part of appellant which were submitted by the court to the jury, and keeping steadily in mind the fact that the questions so submitted were not the alleged negligence of the employés operating the train in failing to blow the whistle or ring the bell, nor the alleged negligence of the watchman Broadwell, but only the questions of negli-

gence on the part of such employés: (1) In failing to keep a lookout; and (2) if such lookout was kept, failure to stop the train in time to prevent the injury—the material facts relevant to those questions are substantially as follows: The undisputed testimony shows that the night was dark; that the injury occurred at about the middle of a curve in the railroad track; and that the deceased, when last seen by his companion Broadwell, was sitting near the end of a cross-tie on the inside of the curve. Some of the witnesses testified that the curve was sharp, while others stated that it was slight; but, be that as it may, it is a well-known fact, as testified to in this case by two experienced witnesses that the main part of the light from the headlight of a train from the viewpoint of any one performing the duties of engineer or fireman is cast in a straight line in front of the engine, and therefore, when the track in front of the engine curves, the light from the headlight will not expose to the view of the engineer or fireman as much of the track as it would if there was no curve. In fact, the witnesses referred to said that, in so far as seeing anything upon or adjacent to the track on the curve, the headlight would be of no benefit whatever to the engineer; and, while we concede that the jury was not required to accept that statement as absolutely correct, still reason and common sense teach that a headlight will not render the same assistance to the engineer and fireman upon the engine where there is a curve in the track as would be the case if the track was straight. It is true that the Broadwell boy testified that he and the deceased had a fire near where deceased was sitting, but it was not shown that the fire was blazing to such an extent as would necessarily disclose to those in charge of the train the presence of the deceased. The Broadwell boy testified that when he left him a few minutes before the accident, the deceased was sitting on the bucket with his elbows resting upon his knees and his head resting in his hands; and the testimony of another witness, who examined the place referred to shortly after the accident, shows that the bucket was so much lower than the track as to render it improbable that in the brief time consumed by the passage of the train any employé in charge thereof could have recognized the deceased as a human being, occupying a position where he was likely to be struck by the train. It is true that more than one witness, who seem to have subsequently made the test, stated that they had stood at the place referred to in the nighttime, and counted some six or eight telegraph poles from the light given by an approaching headlight, and it was shown that the telegraph poles were about 150 feet apart. But the light furnished by a headlight to those in front or at an angle from the front is quite a different thing from the light furnished to those who are behind the headlight and occupying the engineer's and fire-

man's places; and the fact that the witnesses referred to could see the various telegraph poles from the light of the headlight is no proof of the fact that the engineer or the fireman could see the persons referred to. But, if such were the case, that would not be the true test, because the deceased was not standing up, but was sitting down with his head and shoulders bent over toward the ground. In fact, several witnesses, who examined the premises soon after the accident, said they saw the print of the bucket and shoe heels in the ground, thereby indicating that some one had been sitting on the bucket with his back towards the track; and one of them, who seems to have made measurements, testified that a bucket located at that place would be 36 inches (or 3 feet) below the top of the rails, and 18 inches from the end of the cross-tie. That is the most satisfactory evidence in the record as to where the deceased was located when his companion Broadwell left him, and indicates that if he had remained there in the position he was when last seen, he would not have been injured. And it also indicates that after Broadwell left him he fell asleep, and that the noise of the train when it reached that point awakened and frightened him, and that in a dazed condition of mind he jumped up and, in doing so, placed himself nearer the track, and therefore was struck by the passing train.

Furthermore, conceding that testimony was submitted showing that for many years the public had been using the railroad track at the place referred to and at a crossing some distance further on as a pathway, and, bearing in mind the fact that some witnesses stated that such use was at night as well as in daytime, still there was no proof of such repeated and continuous use at or about 5 o'clock a. m. as would require those in charge of the train in question to anticipate such use of the track at that time of night, and therefore the failure to keep such lookout during the brief time referred to is not, in our judgment, sufficient proof of negligence. While it is true that the train was approaching the town of Caldwell, which was about a mile and a half further north, it was not in a town or village, nor at a place, where persons might be expected to use the track as a footpath or otherwise at the time that the train in question passed, traveling, according to the undisputed testimony, at a rate of speed somewhere between 10 and 25 miles per hour. Upon that subject we quote as follows from Railway Co. v. Malone, 102 Tex. 273, 115 S. W. 1158:

"The reason for requiring a railroad company to use the care specified to avoid injuring persons who were walking upon its track at a place where it is commonly used is that such use notifies it that people are liable to be there; therefore the operatives of trains must use ordinary care to discover them, and also use such care to avoid injuring them. The rule does not apply to the same place when used at night if the company had notice only of the fact that the

public used the track in the daytime. The facts must be such as would cause an ordinarily prudent person, under similar conditions, to expect to find people at that place at that time. Bradley v. S. A. & A. P. Ry. Co., 80 Tex. 84 [16 S. W. 55]; Frye v. St. Louis, I. M. & S. Ry. Co. [200 Mo. 377], 98 S. W. 566 [8 L. R. A. (N. S.) 1069]."

It is true that in the case cited the Supreme Court held that the injured party was a trespasser, and therefore guilty of contributory negligence, as matter of law, and that the railroad company owed him no duty of keeping a lookout to see if trespassers were upon the track; and it is true that we hold in this case that the deceased was not a trespasser in going and staying all night with appellant's watchman Broadwell upon appellant's right of way, but we do not hold that the fact of his being invited to do so by the watchman gave him a license to go upon the track or place himself in a place of danger; and, as appellant had no ground for supposing that any person was in such place of danger on the occasion referred to, we do not believe that it should be held guilty of negligence, even if its employés failed to keep a lookout for persons upon the track at the time referred to; and in addition to the Malone Case, we cite Laeve v. Railway Co., 136 S. W. 1129, decided by this court. In the case at bar it was not shown that any one had ever been seen walking on the track later than 1 o'clock at night.

This brings us then to the question of discovered peril, which we dispose of as follows: None of the employés engaged in operating the train were placed upon the stand, and there was no affirmative proof that either of them saw the deceased, either before or after he was injured; and the law is well settled that, in the absence of knowledge of the injured party's perilous situation, the duty of exercising all reasonable means for his protection does not arise. Counsel for appellees make the contention that proof of such knowledge was shown by circumstantial evidence, taken in connection with the averment in appellant's answer that its employés kept a proper lookout on the occasion in question. The contention is that if such lookout was kept, then the employés referred to must have discovered the deceased and his perilous situation in time to have prevented the injury. Two answers can be made to that argument: One being that the averment referred to in the answer was not put in evidence by appellees, even if it could have been done—which we do not hold—and the other is that the proof fails to show with any degree of satisfaction that the deceased could have been discovered by those in charge of the train in time to have avoided the injury.

[9]. As the case is to be reversed, we refer to one objection urged by appellant to the charge of the court, which seems to us to be tenable, but which was not made in the court below, and therefore is not held to constitute ground for reversal. Upon the measure of damages the court instructed the jury that if they found for appellees, they should assess their damages at such sum— "if now paid in cash, that would be equal to the value of the services of the said Ramond Prazak until he arrived at the age of 21 years, and if you find that he would, after having arrived at the age of 21 years, have contributed further sums to the plaintiffs, then for that amount in addition thereto."

Appellant objects to this charge as being equivalent to telling the jury that appellees would be entitled to recover for the gross value of the services of the deceased during his minority, without making any allowance for the expense of his maintenance, education, etc. In the text-book called Death by Wrongful Act by Tiffany, § 164, the rule upon this subject is stated as follows:

"In an action for the benefit of a parent for the death of a minor child, the damages necessarily include the loss of the child's services during minority, and the measure of the damages is the value of the services, less the probable cost of support and maintenance."

And the same rule is stated in 13 Cyc. p. 369, and supported by a long list of authorities. We think that the charge of the court in that respect was misleading, and suggest that it be corrected upon another trial.

We also suggest that the court change the fourth paragraph of its charge, submitting the question of discovered peril, so as to require, as a prerequisite to a recovery, that the jury should not only find the facts therein recited, but should find that the employés operating the train discovered the deceased on the track in time to have stopped the train and prevented the injury.

For the reasons stated, the judgment is reversed, and the cause remanded.

Reversed and remanded.