## COMMUNITY NATURAL GAS CO. v. LANE.

### No. 8245.

Court of Civil Appeals of Texas. Austin.

Oct. 25, 1939.

Rehearing Denied Nov. 22, 1939.

Writ of Error Dismissed Jan. 10, 1940.

See 134 S.W.2d 1058.

Cox & Brown, of Temple, and Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for appellant.

Ned Elnor Moore and De Witt Bowner, both of Temple, for appellee.

McCLENDON, Chief Justice.

This is a gas explosion case. This court held as a matter of law that there was no duty on the part of the Gas Company to inspect the piping inside the building at the time it turned the gas into the system supplying the south apartment, reversed the trial court's judgment and rendered judgment for the Gas Company. Tex.Civ. App., 97 S.W.2d 703. Our judgment was reversed by the Supreme Court upon the holding that the Gas Company was not absolved as a matter of law from making such inspection, and the cause was remanded to this court to pass upon other assignments of error urged by the Gas Company which were rendered immaterial under our above holding, but which became material under the Supreme Court's holding. 123 S.W.2d 639. The facts upon the issue of liability, that is negligence vel non of the Gas Company, are quite fully detailed in each of the above opin-

ions. We shall not reiterate them here, but refer to those opinions for their statement.

There are several assignments of error attacking the sufficiency of the evidence to support certain specific jury findings. These assignments rest upon the same contentions as those asserting insufficiency of the evidence to support actionable negligence; and are overruled under the Supreme Court's holding in this regard.

The remaining assignments relate to: the charge (special issues); the argument of counsel; the judgment, as to excessiveness ($20,000); the lack of necessary parties plaintiff (a married son and daughter of the Lanes). These assignments will be considered in the order named.

Complaint is made of refusal to submit a special issue "that the occurrence complained of was the result of an accident," which was defined as "an occurrence which happens without the fault of either the plaintiff or the defendant." The issue and definition were correctly framed, and the question thus presented is whether the evidence raised factually the issue of "accident" or "unavoidable accident" as it is usually denominated in the decisions. The undisputed evidence showed that the building, originally a single dwelling, had been converted by the owner into a duplex apartment, with but a single bathroom, situated in the south apartment, for use by the two tenants. The owner later had each apartment piped for gas with a system of its own entirely disconnected from the system in the other apartment. Later the owner had a by-pass installed connecting the two systems in the bathroom, so as to allow the bath heater to be supplied with gas from either system. The gas which caused the explosion escaped from an uncapped pipe in the Lane's (north apartment) kitchen. The only way this gas could get into the north apartment system, which was then cut off from the supply pipe at the property line, was through this by-pass; and the gas could only get into the by-pass when both cocks or cut-offs in the two lines leading to the heater were open. Nor could it then escape into the kitchen if the pipe were capped. In other words, there must exist simultaneously (1) the cock leading from the south system into the heater open, (2) the cock leading from the heater to the by-pass open, and (3) the pipe in the Lane kitchen uncapped. This condition could not have existed prior to the date of the explosion, for the reason that the bath heater had been used constantly by both families for about three months prior thereto and no escape of gas from the kitchen pipe detected. Either in some way unexplained by the evidence the by-pass cock was opened or the pipe uncapped sometime during the day of the explosion. Now we have affirmative testimony that the pipe was not capped for some time before the date of the explosion. Mr. Lane so testified, but he was not certain how long before that date he first observed it. This testimony, if accepted as conclusive on the point, would indicate that the by-pass cock was closed up to the date of the explosion. There was also testimony by Mrs. Hargrove and her daughter that they did not open or manipulate the by-pass cock. However, it must have gotten open in some way on that date, if the kitchen pipe was uncapped prior thereto. If we assume that the actionable negligence vel non of the Gas Company was a fact issue for the jury (a subject discussed later), then (absent such negligence) the proximate cause of the explosion is referable to one or more of a series of occurrences. There was no contention and no intimation in the record of any negligence on the part of either Mr. or Mrs. Lane. It is true that the physical situation that brought about the explosion is relatively simple; but it does not follow that determining the causal act, omission, or circumstance producing this situation is of simple solution. See San Antonio & A. P. Ry. v. Behue, Tex.Com.App., 231 S.W. 354. In the chain of events leading up to the explosion might be noted: (1) the act of the owner in installing the by-pass; (2) his failure to notify the Gas Company thereof; (3) his failure to notify or warn the tenants of the situation; (4) failure on someone's part to cap the kitchen pipe, or the removal of the cap by someone; (5) opening of the by-pass cock by someone. Absence of either 1, 4 or 5 would certainly, and of 2 or 3 would probably, have prevented the explosion. It is now firmly established in the law of negligence in this state that an occurrence, brought about without negligence on the part of either party to a suit, is an accident, and where the evidence raises the issue as a fact question, the defendant, upon proper request, is entitled to have it submitted to the jury. The subject is fully treated with citation of authorities in 30 Tex.Jur.,

pp. 673–675, § 26. We sustain this assignment.

■ Complaint is made of the court's definition of "proper inspection" as follows: "The phrase 'proper inspection' as used herein means an inspection only of such gas pipings, connections and other gas fixtures inside the house as are visible to the eye without removing any flooring or walls in such house, and it means an inspection made with such care as a person of ordinary prudence would exercise under the same or similar circumstances."

The jury found that a proper inspection (as defined) was not made at the time the gas was turned into the south apartment. The pertinent special issue is copied in the Supreme Court's opinion. The objection to the definition (among others) was that it placed "too great a burden upon defendant, in that, as a matter of law there was no burden upon the defendant to inspect the pipes whatsoever by the use of the eye." The clear import of the definition was to instruct the jury that it was the duty of the Gas Company when it turned the gas into the south apartment to inspect "such gas pipings, connections and gas fixtures inside the house as are visible to the eye," etc. Considering all the circumstances in evidence, we think clearly it was a question of fact whether a duty rested upon the Gas Company to make an inspection of the pipes inside the house. That was the holding in the leading case of Schmeer v. Gas Light Co., 147 N.Y. 529, 42 N.E. 202, 30 L.R.A. 653, where the facts supporting liability were much stronger than in this case. There, there was but one system of piping, the plans of which were known to the Gas Company, leading into a building occupied by several tenants. Here, there were two separate systems, wholly disconnected from each other originally, and later connected by a by-pass without the knowledge of the Gas Company. We hold that it was a question of fact for the jury to determine whether the character of inspection it made, the meter test, met the requirements of ordinary care; and that the definition was erroneous in the respect complained of.

■ The definition of proximate cause was objected to because it was "not a full and complete and correct definition of said phrase, and because said definition does not account for the element of new and independent cause or intervening agency."

The objection was good if there was evidence of such new and independent intervening agency. See Texas & N. O. R. Co. v. Robinson, Tex.Civ.App., 57 S.W.2d 938. There is no evidence as to when the kitchen pipe became uncapped. If it was capped when the gas was turned into the south apartment, then we think the issue of independent intervening cause would be raised as a fact question.

■ Complaint is made of a number of references in the charge to the gas turned into the south apartment as "defendant's gas," on the ground that such references assumed that the title to the gas was in the Gas Company after it had been delivered into the pipes of the owner of the building upon request of the tenant of the south apartment. The title to the gas is wholly immaterial to any issue in the case, therefore the error (if error) was harmless.

■ The special issue upon the amount of recovery reads: "Answering from a preponderance of the evidence, and fixing the same at such sum of money, if anything, as if paid in cash in hand at this time, will fairly and justly compensate the plaintiff for the death of his wife, Emma Lane, taking into consideration as elements of damage so far as shown by a preponderance of the evidence to result naturally and probably from her death, the following: Reasonable value of the services of said Emma Lane to plaintiff from February 11, 1933, for and during such time thereafter as you may believe she may have lived except for the explosion in question, at what sum, if anything, do you assess plaintiff's damages?"

There were a number of objections to this issue, only one of which we think has substantial merit, namely, that it failed "to give the jury the elements of expense to which the plaintiff would be subjected during her lifetime in providing for her maintenance and support, probable illness or other proper and natural items of expense in connection therewith." This objection was well taken under the holding in Gulf C. & S. F. R. Co. v. Prazak, Tex.Civ.App., 181 S.W. 711 (Chief Justice Key writing for this court).

■ Appellee contends that this defect in the charge, being one of omission only, cannot be reached by objection; but requires tendering a correct special issue upon the subject, citing Missouri K. & T.

R. Co. of Texas v. Hurdle, Tex.Civ.App., 142 S.W. 992. That decision was under the law as it existed prior to the requirement (R.C.S. Art. 2185) that objection to the charge be made before it is read to the jury. Presentation of a special issue or charge is not now required. Gulf C. & S. F. R. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183, approving Hines v. Kelley, Tex.Com.App., 252 S.W. 1033, and Houston & T. C. R. Co. v. Gant, Tex. Civ.App., 175 S.W. 745.

▮▮▮▮ There are seven assignments of error complaining of different portions of the argument of appellee's counsel. As to six of these we do not regard the argument as transcending the bounds of legitimate discussion of the evidence. The remaining assignment we now consider. After a long and somewhat involved discussion of the question of liability, counsel said, "Wouldn't that be the devil of a lot of consolation to you if that had been your wife." The argument was clearly improper. It was an appeal to sympathy based upon the most sacred family tie; and clearly had no place in a discussion of the issue of negligence of the Gas Company. It is unnecessary to determine whether it constituted reversible error, absent objection at the time it was made. In support of these assignments appellant cites Dallas Ry. & Terminal Co. v. Smith, Tex.Civ.App., 42 S.W.2d 794, and Brown Cracker Co. v. Castle, Tex.Civ.App., 26 S.W.2d 435. In view of the writer's comment on the latter case in Texas & N. O. Ry. v. New, Tex.Civ.App., 95 S.W.2d 170, it should be observed that the argument in those cases related to the amount of damages to be awarded for physical pain and suffering and the jury were referred to their own experience in fixing the amount. Regardless of the correctness of the holding in those cases, the above argument was manifestly improper; and should be avoided upon another trial.

▮▮▮▮ The assertion that the amount of the judgment ($20,000) is excessive is predicated upon the following contentions: There was no evidence from which any element of damage could be considered other than the services of Mrs. Lane as a housewife, and the amount of the judgment was out of all proportion to what such services were reasonably worth; and especially so, since her contribution to plaintiff was limited by the probable duration not only of her life, but also of that of Mr. Lane, and there was no evidence of his age, condition of health or life expectancy. In addition to her services as housewife, plaintiff plead that Mrs. Lane assisted him in his fruit stand business, the value of which assistance he alleged at $150 per month. The evidence showed these services, but there was no evidence of their value, and no evidence from which their value could be estimated. It is now well established that "a jury can estimate" the value of the services of a wife as such from testimony detailing the character of such services "as well as any witness likely to be called. It is not necessary that witnesses should give money estimate of such value." Gainesville H. & W. Ry. Co. v. Lacy, 86 Tex. 244, 24 S.W. 269. However, where it is sought to predicate recovery upon the value of the wife's services in a profession or business, or in any other "peculiar way," the rule seems to be that there must be evidence of the value of such services. Missouri K. & T. R. Co. v. Vance, Tex.Civ.App., 41 S.W. 167. As regards lack of proof of Mr. Lane's health, etc., we quote from the Lacy case, above: "Mrs. Lacy testified in person before the jury, and was subject to their observation. The defendants cross-examined her, but asked her no question as to her age, nor did they offer any testimony upon the question. We do not mean to assert that a jury may act upon what they observe during a trial as a general rule; but upon a question like this, in which age is but a help to arrive at the conclusion sought, we think her presence is proper to be considered by this court in determining the sufficiency of the evidence. The evidence was sufficient to enable the jury to approximate the age of the plaintiff with reasonable certainty."

The evidence showed that Mrs. Lane was 41 years old, in good health, and performed all her duties as a wife well. Even eliminating her services in Mr. Lane's business, we do not feel that the amount of the judgment is so large as to be unconscionable, or to warrant our setting it aside on that ground alone. Of course this issue is immaterial, if our other holdings are upheld.

▮▮▮ Upon the issue of defect of necessary parties plaintiff the facts are these: the suit was filed in March, 1933. In December of that year defendant took the deposition of plaintiff who testified in response to interrogatories propounded by

defendant that Mrs. Lane was survived by two children (a son and daughter), both of whom were adults and married. There were two trials of the case, one begun February 5, 1934, and the other June 18, 1934, in each of which Mr. Lane gave the same testimony on this point as in his deposition. The question of defect of parties was raised for the first time in appellant's amended motion for new trial. In opposition to this motion, appellee showed by affidavits of the son, the daughter and her husband that neither Mr. nor Mrs. Lane had ever contributed to their support or otherwise in any manner since their respective marriages, that they had no claim whatever against the Gas Company; that they were not entitled to share in any benefits of the death statute; that they had requested Mr. Lane not to join them in the suit; and that they released the Gas Company from any liability to them. There was a hearing upon the motion of which appellant's attorney was notified, but declined to attend. At this hearing the son, daughter and son-in-law appeared in person and testified to all facts stated in their affidavits. Mr. Lane testified to the same effect. It was also shown that the son was present in the court room during the first trial and was introduced to appellant's counsel. After the hearing and before the court's ruling on the motion, appellant filed exceptions to the action of the court in permitting the son, daughter and son-in-law to testify, on the ground that such testimony could only be given "during the regular progress of the trial on its merits," and that "any such release or waiver testified to on the part of such unjoined heirs is without consideration, a nudum pactum, and void, and could not in law constitute an effective bar and defense against a future action on their part, since they are not parties to the suit, and any decision of this court with respect thereto would not be res adjudicata." The case most nearly in point in support of appellant's contention is Ft. Worth & D. C. Ry. v. Wilson, 85 Tex. 516, 22 S.W. 578, 579. The controlling distinction between that case and this is that there, in opposition to the motion for new trial, the plaintiff tendered a release of all claims against the defendant by the unjoined party (father of deceased). In holding that the showing in opposition to the motion was insufficient to cure the defect of parties, the court said:

"Such proof should be made during the progress of the trial, under the rules governing the introduction of other evidence, and subject to the valuable privilege of cross-examination.

"Notwithstanding a paper purporting to be a release by the parents of the deceased was filed, it would be worthless to the defendant in a suit hereafter brought by them, if they should prove that they never executed a release. The certificate of the notary public that they acknowledged its execution was not proof of the fact. It was accepted and acted upon without the offer of any other evidence of its genuineness."

The situation is altogether different here. The son, daughter and son-in-law appeared in person at the hearing on the motion and testified orally to the same effect as in their affidavits. This appearance and testimony were in support of appellee's opposition to the motion to set aside the judgment, and were for the known and acknowledged purpose of upholding the judgment. In so far as concerns the issue of res adjudicata, clearly neither the son nor the daughter could thereafter assert any liability against the Gas Company, since to do so they would have to repudiate their sworn statements, given in open hearing for the very purpose of upholding the judgment. By every principle of estoppel they would be barred from thereafter asserting liability against the Gas Company, —as much so as if they had been parties to the action and a judgment had been rendered against them.

Independently of this holding, the record conclusively shows that the son and daughter had no justiciable interest in the suit, and therefore the failure to make them parties was harmless. The fact that the evidence was given in the hearing upon motion for new trial, and not during the progress of the trial, is not material in view of its conclusive effect. Had the issue been raised in the trial a directed verdict against the son and daughter would have been required under this testimony. Under these circumstances it was not material whether or not the jury actually heard the testimony; their function being to pass upon controverted facts only. An analogous situation was presented in Lawther Grain Co. v. Winniford, Tex.Com. App., 249 S.W. 195. The right of cross-examination was afforded appellant. Its

failure to exercise it was of its own choosing.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.