**CHESSHIR v. NALL et al.**

No. 5935.

Court of Civil Appeals of Texas. Amarillo.

Jan. 24, 1949.

Rehearing Denied Feb. 21, 1949.

Hart, Brown & Sparks, of Austin, and
J. R. Porter, of Clarendon, ·for appellant.

Scarborough, Yates, Scarborough &
Black, of Abilene, and George E. Wyse,
of Austin, for appellees.

PITTS, Chief Justice.

Appellee, Michael G. Nall, Sr., sued appellant, S. M. Chesshir, administrator of
the estate of his brother, A. Brooks Chesshir, deceased, for damages as a result of
the death of Marjorie Nall, appellee's wife,
and for damages done to his automobile
both by reason of alleged negligence on the
part of A. Brooks Chesshir during his
lifetime, which alleged negligence caused
a head-on collision between two automobiles driven, respectively, by A. Brooks
Chesshir and appellee's wife, Marjorie
Nall. The collision occurred on November 19, 1947 when the automobiles driven
by the said parties met on United States
public highway number 190 about seven

or eight miles west of Lampasas, Texas. Both drivers were killed instantly and the automobiles were badly damaged. Appellee filed the suit individually and as next friend for his minor son, Michael G. Nall, Jr. Mrs. Madge Kilgo, Marjorie Nall's mother, was a party plaintiff in the trial court. She did not recover anything in the trial court and is not a party to the suit on appeal. The suit was originally instituted in the District Court of Lampasas County, Texas, but upon the sustaining of a plea of privilege filed by appellant, the case was transferred to Donley County, Texas, the former home of A. Brooks Chesshir, deceased, and where the administration on his estate was pending.

On August 16, 1948 the case was tried before a jury in the District Court of Donley County. In response to special issues submitted to the jury it found, in effect, that A. Brooks Chesshir was operating his automobile on his left-hand side of the center line of the highway at the time of the collision and that such was a proximate cause of the collision that resulted in the damage hereinafter set out. The jury awarded damages in the sum of $3000 to appellee to compensate him for the loss sustained by him as the result of the death of his wife and the sum of $800 to compensate him for damages done to his automobile. It awarded damages in the sum of $7000 to appellee's son, Michael G. Nall, Jr., age four years at the time of the trial, for his loss sustained by reason of the death of his mother. Judgment was rendered in accordance with the jury findings and an appeal has been perfected to this court.

Appellant attacks the trial court's judgment on the grounds of alleged insufficiency of the evidence, the admission of improper evidence, the refusal to instruct the jury on the question of unavoidable accident, and on the question of the negligence of appellee's wife and the refusal of the trial court to properly instruct the jury otherwise as hereinafter set out.

■■ The verdict and judgment being for the appellee and his son, we are required to view the evidence in the light most favorable to them and our statements relative to the evidence are made from that viewpoint. In considering the sufficiency of the evidence to sustain the findings of the jury we are required to disregard all evidence adverse thereto and consider only the evidence favorable to the findings, indulging every legitimate conclusion which tends to uphold such findings. Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683, and numerous other authorities there cited.

This record reveals a gruesome story. Appellee was a sergeant in the army and was stationed at Camp Hood located near Killeen, Texas, and 25 miles from Temple, Texas. He and his wife, Marjorie, had been married five years. He was 31 years of age and Marjorie was 25 years of age at the time of her death. He and his wife and their only child, Michael G. Nall, Jr., lived at Hood Village, a government station near Camp Hood. On Sunday, November 16, 1947, Mrs. Marjorie Nall and her son drove to Abilene, Texas, Mrs. Nall's former home where her mother then lived, for the purpose of getting Christmas toys and laying them away for Michael, Jr., until the following Christmas. While they were returning home three days later, she and the small son were riding alone in a 1942 four door Buick, super sedan, owned by her and appellee when the collision occurred.

A. Brooks Chesshir, age 45 years, and G. B. Purcell of Shamrock, Texas, were returning from a deer hunt in Burnett County, Texas. Apparently they had been well rewarded for their efforts and doubtless they were returning home with much pride and joy as they had satisfactory evidence with them to prove their accomplishments as successful hunters. The two men were riding alone in a 1947 tudor Pontiac automobile with a trailer attached thereto both owned by Chesshir. In the trailer were the carcasses of four deer and the hunting equipment and fire arms used on such an excursion. G. B. Purcell was asleep and A. Brooks Chesshir was driving at the time of the collision. Chesshir was driving west and appellee's wife was driving east on the said highway.

The highway was running almost east and west at the point of collision and was practically level where the collision occurred but there was a slight curve and a small incline in the highway at the point of collison, but nothing there to obstruct the view of either party. Chesshir was driving up the slight incline and on the outside of the slight curve. The highway was marked with a center line. There were dash marks by the side of the center line on the side of the highway upon which A. Brooks Chesshir was driving, making a double line to warn drivers on that side of the highway as they proceeded up the slight incline. The top of the incline was several hundred feet west of the point of collision. The evidence conclusively establishes the fact that, for some reason, Chesshir's automobile proceeded across the center line of the highway immediately before his automobile met the automobile driven by appellee's wife and the two automobiles came to a head-on collision at a point some 18 inches or 2½ feet south of the center line of the highway on that side of the same over which the Buick automobile was being driven, which point was on the wrong side of the highway for the Pontiac being driven by A. Brooks Chesshir. Both automobiles were badly damaged and both drivers were instantly killed. G. B. Purcell, who was asleep at the time, was knocked unconscious. He testified briefly at the trial but he could not throw any light on the material facts about the collision and did not attempt to do so. Several witnesses appeared on the scene immediately after the collision and found the Buick automobile some 25 feet from the point of collision, a few feet off of the highway, lodged against two trees, sitting upright, facing east, the left front wheel off and on the ground a few feet behind the automobile, the left front part of the said automobile badly caved in and the driver dead under the steering wheel. The said witnesses found the Pontiac automobile some 50 feet or more from the point of collision, on the north shoulder of the highway, sitting upright, almost facing south or practically facing the highway, with the left part of the front end badly caved in and the driver dead

under the steering wheel. The trailer was turned on its side but still attached to the Pontiac. The carcasses of the deer and the equipment in the trailer were scattered partly on the highway and partly north of the same.

An ambulance from Briggs-Gamel Funeral Company of Lampasas appeared on the scene within approximately thirty minutes and took G. B. Purcell to a hospital in Lampasas. Another ambulance from the same funeral home came at the same time and picked up both dead bodies, took them to the funeral home and prepared each body for burial. Glenn B. Gamel, an experienced mortician, testified that he personally directed and supervised the picking up of the bodies and preparing them for burial. He further testified, in effect, that he first bathed the body of A. Brooks Chesshir and shampooed his hair and before he embalmed the body or injected it by taking anything out of the body or putting anything in the body he pressed several times on the chest of the body of A. Brooks Chesshir to compel the air in and out of his lungs or to produce inhaling and exhaling. Gamel further testified, in effect, that he made such a test to determine whether or not A. Brooks Chesshir had been drinking prior to his death. As a result of the test made he smelled what was apparently the scent of liquor coming from Chesshir's lungs.

W. F. Everett, a deputy sheriff of Lampasas County and an officer of considerable experience, testified that he got a call and went immediately to the scene of the collision. He described the positions and conditions of the respective automobiles and gave testimony about the marks on the highway. He further testified that he examined the automobiles and took three cans of beer from the Pontiac automobile and that he also took some glass whiskey bottles out of the front seat of the Pontiac automobile and that he still had all of it.

Appellant charges that the cause of the collision is speculative and the evidence does not establish negligence on the part of the decedent Chesshir any more than it establishes negligence on the part

of Marjorie Nall, appellee's deceased wife. He further charges that the burden of proof was upon appellee to produce sufficient evidence to justify an inference of negligence, at least, on the part of decedent Chesshir and establish the fact that such negligence, if any, was a proximate cause of the collision. Appellant is correct in the latter contention but the evidence does not support his first charge.

The only witness who saw the collision was M. H. Perkins who lived in Lampasas and was a rancher and trader and did some trucking. He testified by deposition that he was travelling west on the same highway immediately before the collision and Chesshir passed him about one mile from where the collision occurred; that he observed the deer in the trailer after Chesshir passed him and watched them for some distance; that he turned his head and took his eyes off of Chesshir's automobile and the trailer for a short time and then looked up again and "saw them going together." In another part of his testimony he said he "saw the collision, the smoke, steam, dust, whatever did come from the two cars when they went together." He testified that he was some 400 or 500 yards from the collision but there was nothing between him and the collision to obstruct his vision. Yet he could not tell on what part of the highway the collision occurred until he got to the point of collision. He drove immediately to the point of collision and was the first one to get there. The drivers were both in bad condition and the automobiles were both badly damaged. The little boy was crying and G. B. Purcell was lying on the ground. The next person to appear was in a pickup truck and took the little boy into Lampasas to the hospital. Fortunately he was not injured other than a severe shock. The witness Perkins examined the pavement where the collision occurred and saw the marks the Pontiac made on the pavement just before the collision occurred. Over the objections of appellant he further testified that he traced the tracks of the Pontiac from the place it came to a stop to a point across the center line of the highway. He further testified without objections that the marks made on the pavement by the Pontiac were four or five feet long and were black marks made from rubber tires sliding on the pavement; that he saw the marks made on the pavement by both front wheels; that one mark was on the south side of the center line of the highway and the other was on the north side of the said line; and that it showed the left front wheel went over the center stripe of the highway 18 or 20 inches while the mark on the north side was some two or three feet from the center line of the highway. He further testified that there was glass and debris from the cars at the point on the highway where the automobiles apparently came together. On cross-examination of the said witness appellant produced a statement concerning the facts about the collision. The witness identified the statement and testified that he signed the same on November 22, 1947, three days after the collision occurred, and that the statements therein were true and correct insofar as he was able to state. Appellant offered in evidence several excerpts from the said statement. One of the excerpts which the witness testified was true was as follows:

"I stopped and got out of my truck to see what had happened and if there was anything that I could do to help those who were in the vehicles. The point of impact appeared to have been just about two feet to the left, or south of the center line. This was indicated by a set of tire marks apparently left by the Pontiac, which were about four feet long, and cuts freshly made on the pavement, and broken glass and debris. Such tire marks to the left of the center line were apparently made at the time of the impact. There were no tire marks either to the west or to the east of the point of impact indicating that either one of the vehicles had applied or had attempted to apply the brakes at any time before the collision occurred."

Virgil D. Wooten of Lampasas, an experienced photographer, testified that he voluntarily went immediately to the scene of the collision and took pictures of both automobiles at the scene before either of them was moved. He returned to the

scene two days later and took more pictures of the place after the automobiles had been moved and he went with appellant's counsel to the scene of the collision on March 3, 1948 and took still more pictures of the scene. So far as the record reveals, he did not know either of the drivers of the automobiles or any of the parties to this suit but he testified that he took the pictures for commercial purposes. Eighteen of the pictures that he took were introduced in evidence and are before us. Wooten described the scene at the point of collision and among other testimony given by him, he said he examined the highway in an effort to determine the point of impact between the automobiles. He further said he found a stain from rusty water and red dust stains on the pavement approximately 2½ feet south of the center line of the highway on the side where the Buick automobile was travelling.

Jerome Peak testified by deposition that he was in the automobile business at Lampasas; that he went immediately to the point of collision and moved the automobiles to town after the deputy sheriff and others carefully examined the premises. He testified that he found pieces of metal, mud and other debris 2 or 2½ feet over the south side of the center line of the highway and to the left of the center line of the highway travelling west and there were skid marks on the highway leading from the point where he saw the debris on the highway to the Pontiac automobile.

A. F. Cloud, a resident of Lampasas and a maintenance highway foreman for 21 years, testified that he went to the point of collision soon after it occurred. His testimony and that given by W. F. Everett, deputy sheriff, corroborated the testimony given by other witnesses to the effect that the point of contact of the automobiles was south of the center line of the highway. The apparent point of contact was placed anywhere from 18 inches to 2½ feet south of the center line of the highway by all of the various witnesses who attempted to fix such apparent point of contact. According to the testimony of all of the witnesses who appeared at the scene of the collision, the existing physical

facts placed the point of collision on Chesshir's left-hand side of the center line. No witness testified to any physical facts or circumstances that would indicate or suggest that the point of contact occurred at any other place on the highway.

Appellant complains about the admission of certain testimony given by the witnesses Perkins and Everett on direct examination concerning the identification of certain marks on the pavement at the point of collision which had a tendency to prove by circumstantial evidence that the point of contact of the automobiles was on the south side of the center line of the highway. Appellant complains that the testimony of such witnesses merely gives their opinions and conclusions respectively. We think the trial court properly admitted the testimony at the time it was offered since identification of certain marks and tracks of the automobile on the highway could not be considered opinion or conclusion evidence. However, the same testimony in substance was later given without objections from appellant and appellant himself later offered the same testimony in substance and proved the same by direct testimony given by the witness Perkins in his written statement made three days after the collision occurred. It is, therefore, our conclusion that appellant waived any just complaint that he may have had to such testimony by a failure to object to the same offered in substance later and by offering the same testimony in substance later himself and should not be heard to complain about the matter. At any rate, if any error was committed it was a harmless error. Steptore v. San Antonio Transit Co., Tex.Civ.App., 198 S.W.2d 273; Parker v. Bains, Tex.Civ.App., 194 S.W.2d 569; Fleming Oil Co. v. Watts, Tex.Civ.App., 193 S.W. 2d 979; Culwell v. Shann, Tex.Civ.App., 184 S.W.2d 537.

No eyewitness testified that he was close enough to the collision to see the point of contact but the witness Perkins saw the collision from a few hundred yards away and got there immediately and other witnesses got there soon after it occurred. All of them testified as to the

physical facts. Dirt, rusty water, stain and other debris was found on the south side of the highway, across the center line of the highway from decedent Chesshir's side of the highway. Photographs show that the radiators of both automobiles were caved in and badly damaged. There were dash marks on Chesshir's side of the highway by the center line to warn him not to cross the center line. There were black marks four or five feet long on the pavement and tracks were found leading from the apparent point of contact to the Pontiac automobile driven by Chesshir. Upon such evidence the jury found that A. Brooks Chesshir was operating his Pontiac automobile so that a portion of it was to his left-hand side of the center line of the highway when the collision occurred and that such was a proximate cause of the collision. The fact that the Buick automobile driven by Mrs. Nall appeared to be on the right side of the highway insofar as the evidence discloses and the Pontiac driven by Chesshir was on the wrong side of the highway, with no reason or explanation given for such existing fact, raised the issues of fact submitted by the trial court. It is our opinion that the issues were properly submitted by the trial court and that the evidence supports the findings of the jury. Collins v. Smith, Tex.Civ.App., 170 S.W.2d 562, affirmed by the Supreme Court 142 Tex. 36, 175 S.W. 2d 407; Younger Bros. v. Marino, Tex. Civ.App., 198 S.W.2d 109; Straus-Bodenheimer Co. v. Marshall, Tex.Civ.App., 91 S.W.2d 865. Appellant's points to the contrary are overruled.

■ Since Chesshir was operating his automobile on the left-hand side of the highway he was violating the State law and was guilty of negligence per se. Mundy v. Pirie-Slaughter Motor Co., Tex.Sup., 206 S.W.2d 587, and other authorities there cited. Since Chesshir was guilty of negligence per se, it was not necessary to submit the question of his negligence to the jury as contended by appellant. His point to the contrary is overruled.

■ Appellee was not required to offer evidence excluding the probability that the collision might have occurred for some other reason or in some other way as appellant seems to contend. Such a rule would impose upon him the burden of establishing his case beyond a reasonable doubt when he was only required to convince the jury by a fair preponderance of the evidence. This may be done either by direct or circumstantial evidence. Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723; Bock v. Fellman Dry Goods Co., Tex.Com.App., 212 S.W. 635; Bohn Bros. v. Turner, Tex.Civ. App., 182 S.W.2d 419. When appellee offered sufficient evidence to sustain a prima facie cause of action, the burden shifted to appellant to explain why decedent Chesshir was driving on the wrong side of the highway but no such proof was offered by appellant. The only evidence tending to show why decedent Chesshir was driving on the wrong side of the highway was that offered by appellee. The evidence given by the mortician that picked up the body and prepared it for burial and that given by the deputy sheriff who examined Chesshir's automobile at the point of collision had a tendency to show that decedent Chesshir was driving while he was under the influence of intoxicating liquor.

■ Appellant charges that the trial court erred in refusing to submit to the jury the issue of unavoidable accident and in refusing to submit issues of negligence on the part of Mrs. Marjorie Nall, the driver of the Buick automobile, as to whether or not she failed to keep a proper lookout, whether or not she was driving on her left-hand side of the highway and whether or not she was driving at an excessive rate of speed. The trial court prepared the charge after all of the evidence had been heard and it was not required to submit any issues other than those raised by both the pleadings and the evidence. The issue of unavoidable accident exists in such a case and should be submitted only when there is evidence that something other than the negligence of at least one of the drivers caused the injuries complained of. In this case the evidence showed conclusively that the collision occured on a level, paved highway at a slight curve with a small incline but nothing to obstruct the view of the drivers. There

was no evidence of any slippery highway or obstruction on the highway or any break in the mechanism of either automobile immediately before the collision or any other intervening cause of the collison. But there was conclusive evidence that the collision occurred on the south side of the highway and tracks and marks were found leading directly from the apparent point of collision to decedent Chesshir's automobile. It is our opinion that the evidence raised no issue of unavoidable accident. Collins v. Smith, supra; Beaumont, S. L. & W. Ry. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899. There was no evidence of any character showing or having a tendency to show that Mrs. Marjorie Nall was driving her Buick automobile at an excessive rate of speed, on her left-hand side of the highway, or that she failed to keep a proper lookout or that she was guilty of any other kind or character of negligence just prior to or at the time of the collision. It is our opinion that the trial court did not commit error in refusing to submit the issues to the jury about which appellant complains and his points to the contrary are overruled.

Appellant charges that the trial court erred in refusing to properly instruct the jury in connection with the issue inquiring about the amount and measure of damages, if any, appellee may recover as a pecuniary value for the future services of his wife, Marjorie Nall, had she lived. The trial court instructed the jury in the usual manner in such cases in connection with the amount and measure of damages, if any, to be awarded under such circumstances. No complaint is made about the instructions actually given by the trial court. The complaint is made because the trial court refused to give the jury an additional instruction to the effect that in considering the amount of damages, if any, appellee would be entitled to recover for the services of his wife had she continued to live, the jury should deduct from the sum it found to be the pecuniary value of her services to appellee such expenses as the jury found would be reasonable and probably incurred by appellee in supporting and maintaining his wife had

she continued to live. In support of his contention, appellant cites the case of Community Natural Gas Co. v. Lane, Tex.Civ. App., 133 S.W.2d 200, 203, and another case therein cited by that court but appellant cites no other authorities in support of his claim. In the first case cited the court reversed and remanded the cause and held that the trial court erred in its failure:

"'to give the jury the elements of expense to which the plaintiff would be subjected during her lifetime in providing for her maintenance and support, probable illness or other proper and natural items of expense in connection therewith.' This objection was well taken under the holding in Gulf, C. & S. F. R. Co. v. Prazak, Tex.Civ.App., 181 S.W. 711 (Chief Justice Key writing for this court)."

In considering an application for a writ of error in the said case, 134 Tex. 255, 134 S.W.2d 1058, the Supreme Court said:

"The application for writ of error is dismissed for want of jurisdiction, correct judgment. In entering such order we do not approve the holding of the Court of Civil Appeals, 133 S.W.2d 200, that the trial court should have sustained an objection made to the special issue upon the amount of recovery for its failure 'to give the jury the elements of expense to which the plaintiff would be subjected during her lifetime in providing for her maintenance and support, probable illness or other proper and natural items of expense in connection therewith.' We do not believe that the holding is supported by the authority cited for it."

However, in approving the opinion of the Austin Court of Civil Appeals in the said case except for the objections pointed out, the Supreme Court approved the following rule laid down by the said Austin Court in the said case:

"It is now well established that 'a jury can estimate' the value of the services of a wife as such from testimony detailing the character of such services 'as well as any witness likely to be called. It is not necessary that witnesses should give money estimate of such value.' Gainesville, H. &

W. Ry. Co. v. Lacy, 86 Tex. 244, 24 S.W. 269. However, where it is sought to predicate recovery upon the value of the wife's services in a profession or business, or in any other 'peculiar way,' the rule seems to be that there must be evidence of the value of such services."

This court observed and applied such a rule in the case of Dallas Railway & Terminal Co. v. Bishop, Tex.Civ.App., 203 S.W.2d 651, in which a writ was refused, no reversible error.

In the instant case the evidence showed that Mrs. Marjorie Nall was only a housewife who looked after the minor child and did all other things necessary as a housewife for appellee. She was not engaged in any other business or profession. Under the facts and the law the jury was justified in awarding appellee the sum of $3000 as compensation for the loss of his wife and appellant's complaint to the contrary is overruled.

Mention has been made of some scratches and probably gouged marks shown on the south side of the pavement near the point of collision as reflected by some photographs taken on March 3, 1948, some 3½ months after the collision. According to the evidence such marks were on the south side of the highway. There was no conclusive evidence offered as to when or how the said marks were made but the evidence is quite persuasive to the effect that the witness Peak caused the marks to be made soon after the collision when he was moving the Pontiac automobile across the highway after hitching on to it to move it in to Lampasas. The photographer who took all of the pictures introduced in evidence testified that he examined the pavement carefully on the day of the collision and he did not see any such marks on the day of the collison

but saw them when he was out there a couple of days later to take more pictures. Jerome Peak who moved both automobiles testified that he knew how the said "marks got on the pavement"; he further testified that he moved Chesshir's Pontiac automobile across the highway soon after the collision at or about the point where the scratches were shown and that the automobile dropped down, dragged and scraped on the pavement until he raised it up and took another hitch on it. The photographer testified that he saw Peak move the Pontiac, saw it drop-down, drag on the pavement and heard the scraping and scratching. All of the evidence heard concerning the cause of the marks have a tendency to show they were made after the collision. For these reasons it is our opinon that the marks shown in photographs taken some months after the collision are not significant.

A careful examination of the record reveals that the witnesses who testified concerning the controlling issues in the case were disinterested witnesses. So far as the record reveals, they were not acquainted with either of the drivers of the two automobiles or either of the parties to this law suit. It appears that the trial judge safeguarded the rights of the interested parties and submitted to the jury all issues that were raised by both the pleadings and the evidence. It further appears that a jury, living in the county where the decedent, A. Brooks Chesshir, had lived and had been engaged in business for many years and where the administration on his estate was pending, found against his estate and for appellee. The evidence supports the findings of the jury and the judgment of the trial court. Appellant's points to the contrary are all overruled and the trial court's judgment is affirmed.