**McCARTHY OIL & GAS CORP. et al.
v. CUNNINGHAM et al.**

No. 12480.

Court of Civil Appeals of Texas.
Galveston.

Jan. 15, 1953.

Rehearing Denied Feb. 12, 1953.

Second Motion for Rehearing Denied
March 5, 1953.

Guy Cade Jackson, Jr., Anahuac, Cecil, Keith & Mehaffy, Beaumont, for appellant McCarthy Oil & Gas Corp., James D. Mc-Nicholas, Woodson E. Dryden and Quentin Keith, Beaumont, of counsel.

C. B. Cain, Liberty, for appellant V. L. Stone.

Markwell & Stubbs and Russel H. Markwell, Galveston, for appellee.

CODY, Justice.

This suit was brought by Hunter Cunningham, individually and as next friend of his seventeen months old son, Christian, to recover damages from McCarthy Oil & Gas Corporation, and its alleged employee, V. L. Stone, for injuries alleged to have been sustained both by his son, Christian, and his wife, Eunice, in a collision between an automobile which was driven by Mrs. Cunningham, and a truck belonging to the aforesaid corporation, which was driven by the said Stone.

There were four witnesses to the collision, namely, Mrs. Cunningham, a Mr. William Murrell, the aforesaid Stone, and his wife, who was in the truck with him at the time of the accident. Though Mr. Stone was present all through the trial, he did not testify. Nor did his wife testify.

According to the evidence of Mrs. Cunningham, she and Mr. Cunningham, accompanied by their four year old daughter and their son, Christian, left Winnie, a small town in Chambers County, where they lived, about 7:30 p.m., on September 21, 1951, for the purpose of taking Mr. Cunningham to Port Arthur, where he was to board a ship as wireless operator. Port Arthur was about forty miles from Winnie. It was raining when they left, and continued raining all the way. At Port Arthur they had the windshield cleaned at a service station. After leaving Mr. Cunningham in Port Arthur, Mrs. Cunningham started back home. It stopped raining by the time she went through Beaumont, some thirty miles from the scene of the collision. She proceeded westerly from Beaumont toward Winnie, upon the Galveston-Beaumont Highway, which is a two-lane, hard surface, well traveled highway. When she was a mile or mile and one-half from Winnie, she saw the lights of an approaching vehicle. The driver of said vehicle and Mrs. Cunningham both dimmed their lights. The weather had cleared up and the stars were shining. The approaching vehicle proved to be a small pick-up truck which was being driven by Mr. Murrell. As she and Mr. Murrell were passing each other, the McCarthy truck, which was being rapidly driven in the same direction as the Murrell truck was proceeding, and behind the same, was suddenly turned by Mr. Stone into Mrs. Cunningham's right hand side of the road, and his wrong side of the road, bringing about the collision.

Defendants plead as special defenses, among others, "unavoidable accident"; that Mrs. Cunningham failed to have her car under proper control; that she failed to keep a proper lookout; that Mrs. Cunningham was operating her vehicle at an exces-

370

sive rate of speed; and the subsidiary issues thereon.

In answer to special issues submitted to the jury, the jury found that Stone was driving the McCarthy truck in the course of his employment, and convicted him of negligence in various particulars, as the proximate cause of the accident, and found damages on account of Mrs. Cunningham's injuries in the sum of $5,000, and on account of the injuries sustained by Christian, in the sum of $45,000. And judgment was rendered accordingly.

Defendants, hereafter called appellants, have predicated their appeal upon the refusal of the court to submit special issues to the jury, embodying appellants' above-indicated specially plead defenses, in their points 1 to 4, inclusive. Their fifth point complains of the action of the court in sustaining appellees' special exceptions to a portion of appellants' Amended Motion for a New Trial, which set up jury misconduct in a particular hereafter set out. Their sixth point complains of jury misconduct in another particular, hereafter specified. Their seventh point complains of the verdict as being too excessive to be permitted to stand.

■ We overrule appellants' first point complaining of the court's refusal to submit their special issue No. 1 to the jury, relating to unavoidable accident.

There is no explanation of the failure of appellants to call Mr. Stone, or Mrs. Stone, to testify. Mr. Murrell was called to testify by appellees, and confirmed the testimony of Mrs. Cunningham, above indicated, as to how the accident was caused by Stone suddenly turning from his right hand side of the road across onto the right hand side of the road to Mrs. Cunningham, whereby it collided with the car driven by her, just as her car was passing the pick-up truck. No horn was sounded nor signal given by the McCarthy truck. The McCarthy truck ended up in the ditch on Mrs. Cunningham's side of the road; Mrs. Cunningham's car ended up with its rear just a little bit on the highway. Murrell testified with respect to the McCarthy truck. "It went to pass me, and as it passed me it hit this car head on and knocked the rear end of the car into my pick-up (truck)."

It is stated in 2 Tex.Jur.Supp. 143, "The issue as to 'unavoidable accident' is not involved where it is undisputed that the defendant's vehicle was traveling on the wrong side of the highway." See also Jessee Produce Co. v. Ewing, Tex.Civ.App., 213 S.W.2d 750, 752; Chesshir v. Nall, Tex.Civ.App., 218 S.W.2d 248, 254; and Younger Bros., Inc., v. Power, Tex.Civ. App., 118 S.W.2d 954, 958.

■ We overrule appellants' second point, complaining of the court's refusal to submit the special issue No. 2, asking whether Mrs. Cunningham was operating her vehicle at the time of the collision without having the same under proper control, and the subsidiary issue of proximate cause.

Appellants rely exclusively upon the testimony of Mrs. Cunningham to raise said issue. She testified that there is a wide, sweeping curve which she was in when she first saw the Murrell truck. That she saw its lights, but didn't know whether it was a truck, or passenger car. There were no houses to keep her from seeing the car down the road. That she did not know if she noticed more than one vehicle approaching. But before the collision she had slowed down some because she knew that at this point the highway made an intersection with a shell road, and that big trucks sometimes shot out from it onto the highway. And that she did not see the McCarthy truck any time until he pulled out from behind the Murrell truck. That she then applied her brakes.. That she had no time to turn to the right or left, but held on tightly to the steering wheel.—The evidence showed that she could not turn to her left because of the Murrell truck, nor to her right, because of the ditch, even had there been time.

Mrs. Cunningham's testimony as to the sudden turning of the McCarthy truck from behind the Murrell truck onto her side of the road is not only confirmed by Murrell, but was not disputed by Stone, as heretofore stated. It is to be presumed that if this testimony was not true, it would have

been denied by Mr. Stone, himself, a defendant, and an employee of the McCarthy corporation, aforesaid. See Traylor v. Brentzel, Tex.Civ.App., 218 S.W.2d 261, 263. Under the undisputed evidence in this case, there was no evidence from which it could have been reasonably concluded that Mrs. Cunningham was operating her car without having it under proper control. Nor would the evidence raise the issue that she was not keeping a proper lookout.— The same holds true with respect to whether she was operating at an excessive rate of speed. The undisputed evidence is that it had stopped raining before Mrs. Cunningham had passed through Beaumont, and that the stars were shining. There was no evidence to support as a reasonable inference that, under the facts, her rate of speed which was within the legal limits, was greater than that sanctioned by ordinary prudence.

Mr. Keith, of Beaumont, represented the appellants on the trial of this case. In their Amended Motion for New Trial, appellants alleged jury misconduct, and attached thereto the following affidavit of D. C. Henry:

"4/21/52

"Statement of D. C. Henry Route No. 2 Box 58 Dayton Texas

"This is to certify that about three weeks ago I was on a jury at Anahuac Chambers County Texas and I did hear some member of the jury panel the morning after the panel had been sworn in there were more than one talking and insurance was mentioned and the remark was made that Keith was an insurance lawyer and *allways* represented insurance companies I myself made the remark in the jury room while we were deliberating that no matter what we gave the Cunninghams the lawyers would get most of the money anyway."

"/s/ D. C. Henry."

At the time the remark about Mr. Keith was purportedly made, none of the jurors to try this case had been selected. Indeed, it was some seven days later that this case proceeded to trial. The allegations of jury misconduct, and the affidavit in support thereof, was excepted to as being too vague and indefinite, and that it was not stated therein who made the remark about Mr. Keith always representing insurance companies, nor who heard same, and further, that it was shown to have been made before the jury was sworn in to try this case, and not made while the jury was deliberating, and was not shown to have been taken into account during the deliberations, nor mentioned in the jury room. Appellees excepted to the allegations by appellants as to attorney's fees, that the remark was not shown by affidavit to have been considered by the jury in connection with the damage issue, nor was any discussion as to attorney's fees alleged to have occurred.

■ The standards by which to determine whether allegations of jury misconduct were sufficient to require the judge to try the issue, under Rule 327, Texas Rules of Civil Procedure, were determined in the Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644. For present purposes, it is enough to say that the rule laid down there is (1) that the allegations of misconduct should, where possible, be supported by affidavits and must show material jury misconduct, and (2) that said allegations are made upon knowledge, and not upon suspicion or hope.

We have concluded that a casual or passing remark made about a lawyer who is seen in the court as to the nature of the law he practiced, made before a jury has been selected, and some seven days before a trial begins in which the remark is suspected of influencing the verdict, is not evidence of material misconduct within Rule 327, which places the burden on the complainant to show probable harm. Appellants do not allege that they inquired of any other juror whether he heard the remark and that he declined to answer, and Mr. Henry does not state that he considered the remark when deliberating upon the damages issue.

■ Coming to the matter of attorney's fees, it is doubtless a matter of common knowledge that personal injury suits are frequently, if not generally, taken by lawyers upon a contingency fee basis. Mr.

Henry did not purport to be doing anything more than speculating that appellees' attorneys were going to get a large share of the recovery. This was a mere casual reference to his personal suspicions, not professing to be based on anything else. We do not believe that under the general affidavit given by Mr. Henry, appellants were authorized to examine and cross-examine the jurors, particularly in the absence of any showing that appellants had submitted queries to other jurors, and that they or some of them declined to answer such queries.

Appellants' sixth point complains in its Motion for New Trial of misconduct upon the part of the juror Fitzgerald in failing to disclose upon voir dire examination, the fact that he had sustained injuries within the purview of the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. Appellants alleged in their Motion for New Trial that their attorney, Mr. Keith, asked the general question of the jury panel, before selection of jurors, if any of them had ever had any claims for benefits under the Workmen's Compensation Law. In a word, appellants complained that Mr. Fitzgerald had had such injuries, that had Mr. Keith known thereof he would not have taken Mr. Fitzgerald on the jury.—It is not disputed that Mr. Fitzgerald had prior claims under the Workmen's Compensation Law.

Upon the hearing on the motion for new trial, Mr. Keith testified that he asked the general questions as to whether any of the panel had had a claim for workmen's compensation benefits. Mr. Markwell testified in substance that Mr. Keith's inquiries as to claims were limited to claims arising out of automobile accidents; that he would certainly have noted it if any question relating to compensation insurance had been asked, as defense lawyers want to keep any idea of insurance from the jury. Without going into detail, it can be said that every juror who was questioned upon the hearing, except Mr. D. C. Henry, aforesaid, testified he could not state if any question was asked about claims arising under the compensation law, but in effect said that the

questions as to claims related to automobile accidents. Mr. Henry testified that the question was asked the members of the panel whether any had received injuries and collected benefits under the Workmen's Compensation Law. Upon cross-examination, he admitted that he had been paid benefits, but had forgotten about that at the time, and failed to give the desired information.

Mr. Fitzgerald, who was charged with jury misconduct, testified definitely that the only questions asked by Mr. Keith were as to claims arising out of automobile accidents; that he heard no question asked about claims for compensation benefits.

■■ The evidence on the hearing, as to whether the question aforesaid was asked on behalf of appellants, was conflicting. The question as to whether misconduct actually occurred is one of fact, and the judge's determination of such fact is final. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Andrews v. Dewberry, Tex.Civ.App., 242 S.W.2d 685, 689. Since the court refused the motion after hearing, he presumably found that no misconduct occurred. Where the court, upon a hearing on jury misconduct based on failure of a juror to answer a question, concludes that either the question was not asked the jury, or was not heard, he would have to find against the fact of misconduct. The case of Dallas Ry. & Terminal Co. v. Kurth, Tex.Civ.App., 247 S.W.2d 930, upon which appellants rely, does not make any contrary holding.

In Texas Employers Ins. Ass'n v. Wade, Tex.Civ.App., 197 S.W.2d 203, which was a compensation case, the court found as a fact that the question was asked if any of the panel had ever had any compensation claims. In that case one Fairchild, who was selected on the jury, testified in substance that the payments of compensation had been made to him voluntarily; that his relations with his employer and the insurance company had been pleasant, and that he had made no mention of any claims, when the panel was asked such question. It appears, therefore, that in the cited case, in failing to answer the question that Fair-

child mistakenly assumed that it related to contested claims. The trial court there incorrectly found, as determined on appeal, there was no jury misconduct, after finding as a fact that the question had been asked.

But here the court's presumed finding is (1) that the question was not asked, and (2) that the juror, who was seated in the back of the room, in any case, did not know the question had been asked. Accordingly, appellant's sixth point is overruled.

Appellants' final point complains of the findings on the damages sustained as excessive. There was evidence which authorized the jury to believe that the child, Christian, had suffered injury to his brain by the destruction of brain tissues, which is permanent because brain cells do not replace themselves. That in the future he would have more epileptic seizures. According to the American Experience Mortality Tables, Christian has a life expectancy of more than forty years after he becomes twenty-one years of age. Under the evidence introduced by appellees, the award of $45,000 for the damages sustained by Christian cannot be held to be excessive. Large verdicts for injuries to the brain, resulting in scar tissue therein, seem to be not uncommon, and appellants have cited no instance where such a recovery has not been sustained. See Selleck v. Board of Education, 276 App.Div. 263, 94 N.Y.S.2d 318; 16 A.L.R.2d 94; Landgraf v. United States, D.C., 75 F.Supp. 58; Boettger v. Miller, 338 Ill.App. 206, 86 N.E.2d 897; Gorczynski v. Nugent, 335 Ill.App. 63, 80 N.E.2d 418.

We have also reviewed the evidence in support of the verdict allowing $5,000 for injuries sustained by Mrs. Cunningham. We are unable to hold that such verdict was so excessive that it should not be allowed to stand. We overrule appellants' seventh point.

Judgment is in all things affirmed.

On Appellants' Motion for Rehearing.

It is now made to appear that we were likely in error in stating in our opinion, "At the time the remark about Mr.

Keith (being an insurance lawyer) was purportedly made, none of the jurors to try this case had been selected. Indeed, it was some seven days later that this case proceeded to trial." We so understood the facts to be such from the record and from the affidavit. We adhere to our prior holding that the affidavit was too vague and indefinite. Motion for rehearing is overruled.