**HESS, INC., Appellant,**

**v.**

**Frank GARCIA, Appellee.**

No. 3676.

Court of Civil Appeals of Texas.

Eastland.

May 4, 1962.

Rehearing Denied June 15, 1962.

Vinson, Elkins, Weems & Searls, Houston, for appellant.

W. Jiles Roberts, Houston, for appellee.

COLLINGS, Justice.

Frank Garcia brought suit against Hess, Inc., for damages under the Jones Act, 46 U.S.C.A. § 688, and the General Maritime Law of unseaworthiness. Plaintiff alleged that he was a seaman and employee of the defendant and a member of the crew of the S.S. Hess Diesel; that while in the course of such employment he injured his low back because of the negligence of defendant Hess Inc., its agents, servants and employees and/or because of the unseaworthiness of the S.S. Hess Diesel, and sustained serious bodily injury for which he sought to recover damages. Plaintiff also sought to recover on the theory of res ipsa loquitur. The case was tried before a jury and, based upon the verdict, judgment was rendered against Hess, Inc., in the amount of $25,000.00. Hess, Inc., has appealed.

Appellee, Frank Garcia, alleged that the S.S. Hess Diesel was unloading kerosene on the occasion of his injury in the harbor of Boston, Massachusetts; that during the unloading operation, a reducing coupling broke allowing kerosene to spill out on the deck of the ship to a depth of about three or four inches; that he slipped and fell in the kerosene on the deck, thereby injuring his back. He alleged that since that time he has continuously had trouble with his back and because thereof has each year missed about two or three months of work as an able-bodied seaman; and that because of his injury he has since been unable to work as a mate; that this condition will be permanent. It was shown that after his injury appellee Garcia remained aboard the vessel until it docked in Freeport, Texas, at which time he secured a Master's Certificate to go to the Public Health Service where he received treatment both as an in patient and an out patient for approximately 33 days, and was discharged as fit for duty on January 3, 1956; that he thereafter shipped out on the S.S. Adabelle Lykes on January 10, 1956; that while serving aboard that vessel he sustained another accident which resulted in injury to his back and received treatment by the Public Health Service for such injuries for some two or three weeks. He was again declared fit for duty by the Public Health Service and shipped out on May 15, 1956. He has been working approximately ten months out of the year since that time.

In numerous points appellant contends that the court erred in submitting the following special issues to the jury over timely objection, because appellant contends that each of such issues amounts to a general charge and does not inquire as to any fact or group of facts amounting to an ultimate issue in the case:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the mate on watch failed to exercise that degree of care in supervising the discharge of cargo at the time and on the occasion in question, which a reasonably prudent person would have exercised under the same or similar conditions?

"SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that the reducer coupling in question was defective?

"SPECIAL ISSUE NO. 13

"Do you find from a preponderance of the evidence that at the time

and on the occasion in question that the defendant Hess, Inc., its agents, servants, or employees were negligent?

"SPECIAL ISSUE NO. 15

"Do you find from a preponderance of the evidence that the kerosene on the deck of the S.S. Hess Diesel prevented the deck of the S.S. Hess Diesel from being a reasonably safe place to work?

"SPECIAL ISSUE NO. 17

"Do you find from a preponderance of the evidence that the reducer coupling was defective?

"SPECIAL ISSUE NO. 19

"Do you find from a preponderance of the evidence that the winch to which the line was attached was defective?

"SPECIAL ISSUE NO. 21

"Do you find from a preponderance of the evidence that the defendant failed to properly rig and man the cargo hose, line and winch?"

It was alleged in appellee's pleadings that appellant, its agents, servants and employees were guilty of negligence proximately causing his injuries in the following respects, to-wit: that the place appellant furnished appellee to work was not a safe place because of the defective reducer coupling; that the winch to which the line that was connected to the hose was not secure; that the line to the cargo hose was attached to the winch; that the line to the cargo hose was not attached to the deck; that the mate on watch failed to properly supervise the discharge operations; that appellant, its agents and representatives were negligent in failing to turn off the pumps as soon as the reducer coupling broke and in failing to furnish safe equipment with which to work. Appellee further alleged that the circumstances under which his injury occurred were such as do not ordinarily occur in the absence of negligence, that the vessel was under the control of appellant, and appellee invoked the rule known as res ipsa loquitur.

Appellee also alleged that the S.S. Hess Diesel was unseaworthy, in the following particulars proximately causing the injury sustained by appellee, to-wit: that the ship in question was not a safe place to work because of the kerosene on the deck; that the reducer coupling was defective in that it broke while being put to its ordinary use; that the discharge hose, line and winch were not properly rigged; that the power was left on the winch to which the line to the cargo hose was attached without an attendant being present; that the winch to which the line was attached was defective, and that the breaking of the cargo reducer or coupling under the circumstances speaks for itself to establish the unseaworthiness of the vessel, and appellee invoked the doctrine of res ipsa loquitur.

No reversible error is presented in any of appellant's points in this connection. To disturb the judgment it would be necessary to hold each of such points well taken. The issues complained of were supported by appellee's pleadings either generally or specifically. Some of these pleadings were general in their nature and no objections were made thereto, such as the pleadings upon which special issues numbers 1 and 19 were based. Other special issues such as issues Nos. 13 and 21 were submitted under the doctrine of res ipsa loquitur and in such cases a general allegation and submission of the issue is proper. Dallas Railway & Terminal Company v. Clayton, Tex.Civ.App., 274 S.W. 2d 422.

■■ As noted, an alternate plea of recovery by appellee was based upon alleged unseaworthiness of the S.S. Hess Diesel. In 91 C.J.S. Unseaworthy, 507, 508, it is stated that unseaworthiness "is a comparative term, and in its ordinary sense means

a deficiency of the vessel in equipment." It is indicated that in determining seaworthiness, consideration must be had for the vessel, the voyage and the cargo; that inability to withstand the ordinary strain of loading or discharging cargo constitutes unseaworthiness; that seaworthiness contemplates a reasonable fitness of the vessel for the purpose of the voyage, so that its cargo may be carried safely and delivered in good condition; that a material consideration is the fitness of the ship for carrying the particular merchandise which it takes on board. Appellee's pleadings supported the issues bearing upon the question of unseaworthiness and the court did not err in submitting such issues to the jury. The findings in answer to such issues fully support the judgment. Appellant's points in this connection are overruled.

There was ample evidence to justify the submission of special issues to the jury and the answers of the jury thereto to the effect that the winch to which the line was attached was defective and was not secured. We overrule appellant's points urging that there was no evidence and that the evidence was insufficient to support such findings.

■ Appellee alleged and the evidence is undisputed that the pumps were not cut off as soon as the reducer coupling parted and that the pump man was not at the switch at the time. Contrary to appellant's contention, the submission of special issue No. 3, inquiring whether the failure to so turn off the pumps was negligence did not amount to a comment by the court on the weight of the evidence to the effect that the pump man was under a duty to turn off the pumps as soon as the coupling broke.

The court likewise did not err in submitting over a similar objection on the part of appellant special issue No. 5 inquiring whether the fact that the line was not attached to a cleat was negligence. We also overrule appellant's point urging that the matter inquired about in special issue No. 5 was irrelevant and immaterial because no inquiry was made concerning whether the negligence inquired about was that of the appellant. The matter inquired about constituted a part of the operation of the ship's business and whoever the person or persons may have been performing such operations they were agents of appellant.

■■ It is urged by appellant that the court erred in submitting to the jury over its objection Special Issue No. 17, which inquired whether the reducer coupling was defective because it constituted a re-submission of Special Issue No. 7, and therefore, emphasized appellee's theory of the case and in all probability influenced the jury in favor of appellee. This point is not well taken. Appellee sought recovery under the Jones Act which requires negligence as a basis of recovery and under the General Maritime Law based upon unseaworthiness regardless of negligence. Appellee was entitled to a separate and independent submission of the two grounds or theories of recovery sought in his pleadings and supported by the evidence. Rule 48 Texas Rules Civil Procedure, Texas General Indemnity Company v. Scott, 152 Tex. 1, 253 S.W.2d 651.

■ Appellee took the witness stand and was permitted to testify over appellant's objection that the reducer coupling here involved was properly regarded as part of the ship's gear, stating that all ships have to carry reducer couplings because they will sometimes be in a port where a shore line is smaller than the ship's line on the manifold and it must therefore be reduced. Appellant objected to the testimony urging that it amounted to a conclusion. Appellant says that the reducer coupling in question was never identified as belonging to the ship and calls attention to appellee's further testimony that he did not know whether this reducer coupling belonged to the ship or not. The point presented in this connection is overruled. Ownership of the reducer coupling

which broke is not material to appellant's liability. Appellee was entitled to recover if he sustained injuries because of unseaworthiness of the S.S. Hess Diesel. A vessel is unseaworthy if its equipment is defective. It is held that a vessel is unseaworthy and its owner is liable for injuries sustained by a seaman thereon because of defective equipment brought aboard the vessel by its owner. Petterson v. Alaska S.S. Co., Inc., 9 Cir., 205 F. 2d 478, affirmed 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798.

■ Appellee's wife was called as a witness and upon direct examination by appellee's counsel inquiring if the injuries sustained by appellee had anything to do with their marital relationship, appellee in a display of emotion jumped up and left the court room. Immediately thereafter counsel for appellant made a motion for mistrial based on the fact that such conduct was highly prejudicial to appellant. In appellant's second point it is contended that the court erred in overruling and in failing to sustain his motion for mistrial. In our opinion the evidence concerning emotional display by appellee before the jury was not such as was reasonably calculated to cause or to have probably caused the rendition of an improper verdict. Appellant did not contend in the trial court that the verdict was excessive nor did he assign such as a ground for a new trial. This point is overruled.

■ In appellant's 21st point it is contended that the court erred in submitting to the jury special issue No. 27, which inquired concerning the damages sustained by appellee because of his injuries. Appellant contends that there was no evidence of probative force from which the jury could determine (1) the amount, if any, of earnings lost by appellee from the time of his injury to the time of the trial, (2) the loss, if any, of appellee's earning capacity, if any, in the future, and (3) that there was likewise no evidence upon which the jury could base a finding of damages for physi-

cal pain and suffering. This point is overruled. Appellant has presented no point and did not contend in the trial court that the verdict was excessive. The contention is that there was no evidence of probative force upon which an issue concerning damages could be based. The contention is not well taken. There was evidence to the effect that Garcia, as a result of his injury, has lost between two and three months each year as an able-bodied seaman since the time of his injury; that the average earnings of an able-bodied seaman has increased from around $525.00 per month at the time of appellee's injury to around $600.00 at the time of the trial; that appellee at the time of his injury was sailing as an able-bodied seaman because of difficulty with the Master Mates & Pilots Ass'n., but was free to go back to sailing, as a mate, after one year; that after the injury he sailed from December 28th, 1956, through July 5th, 1957, as an officer but found that he could not do this work because of the injuries complained of; that there is a pay differential of about $300.00 per month between the earnings of an able-bodied seaman and a second officer and about $50.00 for a third officer; that Garcia was 46 years of age with a life expectancy of 24.43 years, and that his condition is about the same as it was before he received another injury in March 1956, and that he has to place boards under his mattress to sleep even when on board ship. Appellee's medical witness testified that his condition was permanent.

■ In appellant's third point it is contended that the court erred in overruling and failing to sustain appellant's motion for mistrial based upon the cross examination of Dr. J. S. Oliver, concerning a suit against him for damages as a result of alleged malpractice. Dr. Oliver had testified, in effect, that appellee was in excellent physical condition and had been for the past five years. He based his testimony principally upon the records of appellee's pre-employment examinations kept in the doctor's office or clinic. The records

covered about seventeen different examinations. The Doctor had seen Garcia only one time and did not remember him. The remainder of the examinations, as shown by the records of the clinic, had been conducted by a male nurse under the doctor's direction. Dr. Oliver testified that the entries on the record had been made at the time of the examinations. Counsel for appellee, on cross examination, made inquiry as to whether entries made in the hospital records at the Park View Clinic and Hospital, of which Dr. Oliver is part owner, were made at the time the transactions took place. Appellant objected to the question because "Mr. Garcia has never been in the hospital and it has nothing to do with that." Counsel for appellee, thereupon, stated to the court that he thought that "he could tie it in with the record" and was willing for it to be stricken if he was unable to do so. Thereupon, the court indicated that it would be all right to go ahead with that line of questioning. Dr. Oliver denied that he had ever changed the records in the hospital. Counsel for appellee then proceeded to question the Doctor about a case in the 152nd District Court of Harris County in which the Doctor was defendant in a malpractice case and asked him if he had not testified in a deposition taken in that case to the effect that he had added to a record kept by the hospital. No objection was made to this question and the Doctor replied to the effect that he had gone back and added more information to the record but this was done before the controversy developed; that the change had not been made after the patient developed symptoms of tetanus; that he did not see the patient after he developed tetanus and that the patient went to another doctor. No request was made to strike the above testimony nor was there any request for an instruction to the jury not to consider it.

Before the case was submitted to the jury appellant made a motion for mistrial based upon such cross examination of Dr. Oliver, urging that no instruction to the jury could prevent it from resulting in harm and prejudice to appellant and that appellant under the circumstances could not receive a fair trial from the jury. The sole question then is whether the matter complained of shows such prejudicial error that it could not have been cured by an instruction from the court. In our opinion such error is not shown. Appellant's third point is overruled. An examination of the record as a whole does not show that the error complained of was so prejudicial and amounted to such a denial of appellant's rights that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. R.C.P.Rules 434, 503; Condra Funeral Home v. Rollin, 158 Tex. 478, 314 S.W.2d 277; State of Texas v. Parrish, 159 Tex. 306, 320 S.W. 2d 330; Crofford v. Bowden, Tex.Civ. App., 311 S.W.2d 954; Alamo Cas. Co. v. William Reeves & Co., Tex.Civ.App., 258 S.W.2d 211.

We have carefully examined all points urged by appellant and find no reversible error. The judgment is affirmed.