**CONTINENTAL OIL COMPANY, Appellant,**

v.

**Robert E. LINDLEY, Appellee.**

**No. 14392.**

Court of Civil Appeals of Texas.
Houston.
July 9, 1964.
Rehearing Denied Sept. 17, 1964.

John L. McConn, Jr., Houston, and Butler, Binion, Rice & Cook, Houston, of counsel, for appellant.

W. A. Combs and W. Wiley Doran, Houston, and Combs & Mitchell, Houston, counsel, for appellee.

WERLEIN, Justice.

This suit was brought by appellee, Robert E. Lindley, a seaman, under the Jones Act (Title 46, Sec. 688, U.S.C.A.), and also under the General Maritime Law, against appellant, Continental Oil Company, to recover damages for personal injuries sustained by him on the tanker S.S. Ponca City while it was docked starboard side against the wharf at Lake Charles, Louisiana. From the judgment rendered by the court, based on the jury verdict, appellant has perfected its appeal.

Appellee was employed as a wiper, and his work was principally in the engine room of the ship. At about 9 o'clock in the evening, after appellee had finished his work for the day, he went from the afterhousing of the vessel where the crew were housed, along a catwalk about 300 feet in length between the afterhousing and the midship housing, to the deck where the captain's quarters were located two decks above the main deck, in order to make a draw on his pay. It was his intention to leave the ship after making such draw, and to spend the night ashore with his wife and child. In undertaking to go from the captain's quarters to the gangway which was about midship and on the starboard side of the vessel, he descended by a ladder from the deck where the captain's quarters were located to the midship housing end of the catwalk which was on the same level as the deck

next above the main deck, with the intention of descending from such deck to the main deck by means of a ladder near the starboard side of the midship housing. Finding such passage was blocked by a large hose which was being used by members of the crew in loading the ship, he descended from the deck at the end of the catwalk to the main deck by a ladder near the port side of the midship housing. He then made his way on the main deck on the port side of the vessel, looking for a way to get over to the starboard side and the gangway leading to the wharf, when he discovered an iron walkway or bridge with steps at both ends, which led crosswise of the ship under the catwalk and over a number of large pipes on the main deck. Appellee testified that he did not see or know of a ladder which led from about midway of the catwalk to the main deck on the starboard side of the ship, and which he might have used had he known of its presence. The evidence shows that such ladder was obscured by a mast and rigging of the ship, and could not be seen from the catwalk on the deck immediately below the captain's quarters.

Appellee had not previously known of the walkway which, it seems, could be used by members of the crew when working on the main deck or when operating certain overhead valves under or near the catwalk, or when going from one side of the ship to the other. Its elevation was twenty-five inches above the main deck with the lower step eleven inches high and the top step fourteen inches in height. Appellee undertook to use this walkway to get to the starboard side of the ship and the gangway in order to leave the vessel. He testified as follows:

"I come up to it and I stepped up on this step with my left foot and I kind of bent over, kind of shaded up here from the light, what light there was, and I couldn't see where my head was going up there and I stooped over and I come up and unbalanced and hit my knee up on that top walkway."

Appellee testified that there was no rail along the walkway and nothing to steady him as he tried to climb the steps of the walkway to cross over to the starboard side of the ship. There were certain pipes running parallel with the catwalk and just underneath the same, and the distance between the top of the walkway and such pipes was about four feet. It was shown however, that the walkway extended out a little beyond the catwalk and that appellee's head would not have struck the pipes in question even had he stood upright in climbing up the steps. He testified: "I know that now, but at that time I didn't know it because it was shade and those lights shinning from shore, that gangway shaded me and it made it dark in there, just like walking in the shade of a cloud or something out of a light." Appellee admitted that if he had been looking down he would not have bumped his knee but he was worried about his head as he undertook to climb up on the walkway by means of the high steps, fearing his head would strike the pipes under the catwalk. In stepping up in a stooped position, he became unbalanced and his right knee hit at the top of the walkway or top step. No question is raised as to the verdict being excessive. Hence it will not be necessary to discuss the injury to plaintiff's knee and the operations which he had to undergo.

The jury found in answer to Special Issue No. 1 that appellant's failure to provide handrails for the steps on the structure in question was negligence, and in answer to Special Issue No. 2 which inquired whether such negligence, if any, played any part, even the slightest, in producing plaintiff's injury, the jury answered in the affirmative. The jury also found that the maintenance of the steps to the structure in question at a height of eleven and fourteen inches, respectively, was negligence, and that such negligence played some part in producing plaintiff's injury.

Appellant complains that such findings are not supported by any evidence and that in the alternative they are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. The same complaint is made with respect to the answers of the jury to Special Issues Nos. 8 and 9 to which the jury found, respectively, that the manner in which the structure in question was constructed rendered it not reasonably suitable for use for the purpose for which it was intended on the occasion in question, and that the maintenance of the structure in such manner was a proximate cause of appellee's injury.

We have read the statement of facts and have concluded that under the law as enunciated by the Supreme Court of the United States in Federal Employers' Liability Act and Jones Act cases there is ample evidence to sustain the findings of the jury with respect to negligence and unseaworthiness. Appellee testified that in ascending the steps to get on the walkway he became unbalanced and that the walkway was not at all right because of the lack of handrails. Captain Jack Roberts, holder of an unlimited Master's license and a marine surveyor of long experience, testified that he had observed other ships with similar walkways that were equipped with handrails; that handrails are a safety device for the purpose of steadying oneself; that the installation of handrails on vessels had cut down the accident rate; and that the fact that the second step of the walkway in question was fourteen inches over and above the eleven inch lower step, would have a relation with respect to the matter of balance of the user of the steps. To the inquiry as to whether or not handrails would be more necessary in the type of installation in question than they would if there were three steps instead of two, he testified, "Handrails would be advantageous, yes, sir."

In the recent case of Dennis v. Denver & Rio Grande Western Railroad Co., 1963, 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256, the Supreme Court stated:

"It is true that there was evidence in conflict with petitioner's version of

what occurred. * * * But in FELA cases this Court has repeatedly held that where 'there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion.' Lavender v. Kurn, supra, 327 U.S., at 653, 66 S.Ct. at 744, 90 L.Ed 916. 'Only when there is a complete absence of probative facts to support the conclusion reached [by the jury] does a reversible error appear.' Ibid. * * *

"In this case, petitioner's evidence, though vigorously disputed, was sufficient to support the jury's conclusion that respondent's negligence contributed to the injury. Hence, 'the appellate court's function [was] exhausted,' Lavender v. Kurn, supra, 327 U.S., at 653, 66 S.Ct., at 744, 90 L.Ed. 916, and it could not properly substitute its judgment for that of the jury * * *."

The federal courts have broadened the jury function in F.E.L.A. and Jones Act cases so that very little evidence is required to uphold a jury verdict of negligence. Robinson v. Gulf, Colorado & Santa Fe Railway Co., Tex.Civ.App., 1959, 325 S.W. 2d 432, writ ref., cert den., 362 U.S. 919, 80 S.Ct. 672, 4 L.Ed.2d 739, and authorities cited. See Deen v. Hickman, 1958, 358 U. S. 57, 79 S.Ct. 1, 3 L.Ed.2d 28, in which the court referred to its prior holding, "that the proofs justified with reason the jury's conclusion that employer negligence played a part in producing the petitioner's injury." These Supreme Court cases have established that in F.E.L.A. and Jones Act cases the appellate court has no jurisdiction to.overturn a jury verdict supported by some evidence of probative force even though the appellate court should conclude that the verdict is against the great weight and preponderance of the evidence.

■■ The alternate plea of recovery by appellee is based upon the alleged unseaworthiness of the S.S. Ponca City. In Hess, Inc. v. Garcia, Tex.Civ.App., 1962,

358 S.W.2d 391, the court quoted with approval the statement in 91 C.J.S. Unseaworthy, pp. 507–508, that "Unseaworthiness" is a comparative term, and in its ordinary sense it means a deficiency of the vessel in equipment. In speaking of unseaworthiness the U. S. Supreme Court in Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, at 877, 90 L. Ed. 1099, stated: "It is essentially a species of liability without fault, analogous to other well known instances in our law. Derived from and shaped to meet the hazards which performing the service imposes, the liability is neither limited by conceptions of negligence nor contractual in character." The duty of shippers to furnish a seaworthy vessel is absolute. It is required to furnish both a vessel and appurtenances reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. See also H. A. Scandrett, 2d Cir. 1937, 87 F.2d 708, in which Justice Hand, speaking for the court, said: "* * * under the maritime law there is an absolute obligation to provide a seaworthy vessel and, in default thereof, liability follows for any injuries caused by breach of the obligation."

■■ We are not unmindful of the fact that a ship may be seaworthy while in port and yet be unfit for rough water. Lester v. United States, 2d Cir., 234 F.2d 625, and authorities cited. In the instant case the jury knew that the ship was in port and was advised of the uses made of the walkway in question, and with such knowledge found that the manner in which the structure in question was constructed rendered it not reasonably safe for use for the purpose for which it was intended. It is our view that we are not authorized to overturn the jury's finding since there is some evidence of probative force in support thereof.

■ In our opinion the trial court did not err in refusing to submit as the first issue in the charge an issue as to whether appellee bumped his knee on a cross-pipe or on a step on the structure or walkway

across the pipes. Special Issues Nos. 1 and 2 inquired, respectively, as to whether the failure of appellant to provide handrails for the steps on the structure in question was negligence and whether such negligence played any part, even the slightest, in producing appellee's injury. These issues were in conformity with appellee's pleadings and evidence at the trial. Appellee's testimony is quite clear with respect to what he did and how he was injured. The reports given by appellee to the U. S. Health Service, and the history given by him to his doctor, show that the injury occurred as testified to by appellee. It is true that appellee was confronted at the trial with two statements prepared by a third party and signed by appellee the day following the injury, one entitled "Request for Master's Certificate," and the other entitled "Report of Personal Injury," in which it is stated that appellee said he bumped his knee on a cross-pipe on the main deck. Appellee explained at the trial that what he had said was, "Well, I told him I bumped my knee in crossing the pipe on that walkway. He just put it down cross-pipe, I guess. I didn't detail it myself." In his deposition appellee also testified with respect to the walkway in question. The bottom of the ladder from the captain's quarters to the first deck below was right at the midship end of the catwalk. This could explain appellee's statement in his deposition that he "came down the catwalk and went down a ladder * * *."

Appellant, in contending that its said requested issue should have been given first, relies on Westinghouse Electric Corp. v. Pierce, 1954, 153 Tex. 527, 271 S.W.2d 422. In that case it was demonstrated conclusively that plaintiff's injury could not have resulted from the use of the sun lamp in the manner claimed, and hence there was no duty on the part of the defendant to warn of any danger from use in that manner. The Supreme Court held in effect that it was not error for the trial court to inquire in Special Issue No. 1 whether the injury was caused in the manner in which the plaintiff alleged and testified it occurred,

and to submit other issues conditioned upon an affirmative answer thereto.

The Westinghouse case is distinguishable from the instant case. In the case at bar the evidence, with the exception of the two impeaching statements which were explained by appellee, clearly showed that the injury not only could have occurred in the manner appellee pleaded and testified that it occurred, but that it did so occur. It was proper, therefore, for the court to submit issues in accordance with the standard practice. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 1940, 134 Tex. 360, 135 S.W.2d 79. The undisputed evidence shows that appellant had failed to provide handrails for the steps on the structure in question. The first inquiry, therefore, was whether such failure was negligence. Similar issues were submitted with respect to the height of the steps to the structure in question, and seaworthiness. These were all ultimate fact issues. The jury could not have answered the issues on causation as it did without finding that appellee was injured in the manner and at the place as testified by him. Furthermore, the submission of appellee's case as requested by appellant would have deprived appellee of the affirmative and unconditional submission to which he was entitled. Fox v. Dallas Hotel Co, 1922, 111 Tex. 461, 240 S.W. 517; Texas Employers Ins. Ass'n v. Patterson, 1946, 144 Tex. 573, 192 S.W.2d 255; Rule 277, Texas Rules of Civil Procedure.

■ Appellant complains of Special Issue No. 8 as being multifarious. Such issue reads: "Do you find from a preponderance of the evidence that the manner in which the structure in question was constructed rendered it not reasonably suitable for use for the purpose for which it was intended on the occasion in question?"

The ultimate fact issue was whether the walkway or bridge in the manner constructed (indisputably with high steps and no handrail) was reasonably suitable for the purpose for which it was intended. Mitchell

v. Trawler Racer, Inc., 1960, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941. It is our view that the issue in question, though it might have been worded differently, constitutes essentially a proper inquiry. The issue does not assume any disputed fact in controversy. It includes two elements, the purpose for which the walkway or bridge was constructed and whether reasonably suitable for such purpose. These elements are component parts of the one ultimate issue. Our Supreme Court has held in several types of cases that various subsidiary facts or elements constitute, and are properly submitted in, a single ultimate issue. Meyer v. Great American Indemnity Company, 1955, 154 Tex. 408, 279 S.W.2d 575. In Howell v. Howell, 1948, 147 Tex. 14, 210 S.W.2d 978, the court said: "Where, as in this case, the one ultimate issue embraces a number of subsidiary facts, it is not improper to include in the issue these several facts, and a special issue so framed is not duplicitous."

If the jury in the instant case had been in doubt as to the existence of either element encompassed in Special Issue No. 8, it is improbable that the form of such issue would have caused them to return an affirmative answer, as was done. It is our view that the submission in one issue of the two elements above stated is not objectionable as multifarious or an improper grouping of two issues. Both of such elements or facts had to concur and appellee had to prove both by a preponderance of the evidence. Turner v. Texas Company, 1942, 138 Tex. 380, 159 S.W.2d 112.

▇ Appellant asserts that it was error for the trial court in Special Issues Nos. 2 and 4 to inquire whether appellant's negligence, if any, "played any part, even the slightest, in producing plaintiff's injuries" because the same was a comment on the weight of the evidence. The use of the words "even the slightest" unduly emphasizes the fact that even though the evidence might be meager, the jury could find that appellant's negligence played a part in producing appellee's injuries. It is our view that under our state practice the submission was not proper since it is in the nature of a comment by the court although the court gave no independent instruction in connection with such issue. The words "played any part" encompass the slightest part. It was unnecessary to add the superfluous words "even the slightest." In an F.E.L.A. or Jones Act case tried in the State court, procedural matters are governed by the State law. Thompson v. Robbins, 1957, 157 Tex. 463, 304 S.W.2d 111.

Under the decisions of the Supreme Court of the United States appellee was entitled to recover if the negligence of appellant played the slightest part in producing his injury. In view of the holding by the federal courts with respect to submitting such issues, we would hesitate to hold that the manner of submission in this case was reversible error, although in our opinion the issues should have been worded in a different way. This particular point raised by appellant is limited to the negligence phase of the case and does not in any way affect the claim founded on unseaworthiness.

In Rogers v. Missouri Pacific Railroad Company, 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, the court in speaking of the inquiry which should be made in F.E.L.A. cases stated:

"The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit."

In DeLima v. Trinidad Corporation, 2d Cir.1962, 302 F.2d 585, the court reversed the judgment for the defendant because of the refusal of the trial court to submit an issue as to whether "the employer's negligence 'played any part, even the slightest, in producing an injury to plaintiff.'" Instead of such issue the trial court gave the usual instruction on proximate cause. In re-

versing the judgment of the trial court, the court cited the Rogers case, supra.

To like effect see Page v. St. Louis Southwestern Railway Company, 5th Cir. 1963, 312 F.2d 84. In that case the court said:

> "The Supreme Court cases would seem to establish the proposition that in determining whether a jury question is presented the court should confine itself 'to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer *played any part at all in the injury or death.'* 352 U.S. 507, 77 S.Ct. 449. By necessary implication, it would seem to follow that, *if the jury does so conclude,* it would find that the injury or death resulted 'in whole or in part from the negligence' of the employer within the language of the statute, 45 U.S.C.A. § 51." (emphasis added)

See also Ferguson v. Moore-McCormack Lines, Inc., 1957, 352 U.S. 521, 522, 77 S.Ct. 457, 1 L.Ed.2d 511.

The Rogers, DeLima and Page cases are distinguishable from Bertrand v. Southern Pacific Company, 9th Cir., 282 F.2d 569, cert. den. 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694, cited by appellant. The court in the Bertrand case stated: "The proposed instruction is faulty because it bound the jury to find what it was entitled to find but was not required to find." The Page and DeLima cases, supra, show that the charge used in the present case would be upheld by the federal courts, since the Supreme Court of the United States has clearly held that if the employer's fault plays any part, however small, in producing the employee's injury, the employer may be held liable.

■■ It was not error on the part of the court to refuse the issue submitted by appellant on unavoidable accident. With respect to appellee's claim based on the unseaworthiness of appellant's vessel the maritime law must govern, and under such law unavoidable accident is not a defense

to an action based on unseaworthiness. Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. Moreover, the state court must follow the law as established by the federal decisions in cases brought under the Jones Act or the Federal Employers' Liability Act. Guthrie v. Sinclair Refining Company, Tex.Civ.App., 320 S.W.2d 396, writ ref., n. r. e. In Yanow v. Weyerhaeuser Steamship Company, 9th Cir.1957, 250 F.2d 74, the court reversed the judgment of the trial court which charged the jury that, "There are such things as unavoidable accidents—accidents which happen without the fault of anyone." The court concluded that such instruction was improper in a case of maritime injury. In Neal v. Lykes Bros. Steamship Company, 5th Cir.1962, 306 F.2d 313, the court said: " * * * it may be conceded, as appellant claims, that unavoidable accident is not a defense to an action based on unseaworthiness, * * * "

Under the decision of the Supreme Court of the United States in Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967, it seems questionable whether the defense of unavoidable accident is available to a defendant in an F.E.L.A. or Jones Act case. In that case the court said, " * * * The Act of 1908 and the amendment of 1939 * * * leave for practical purposes only the question of whether the carrier was negligent and whether that negligence was the proximate cause of the injury."

In Page v. St. Louis Southwestern Railway Company, supra, 312 F.2d at 93, the court stated:

> "We would agree that ordinarily in a case under this Act (F.E.L.A.) a charge on unavoidable accident is confusing and tends to distract the jury's attention from the simple issues of whether the carrier was negligent and whether that negligence was the cause, in whole or in part, of the plaintiff's injury."

It is our view that even if the defense of unavoidable accident is available in F.E.L.A. and Jones Act cases predicated upon negligence, the issue on unavoidable accident was properly refused in the instant case because there is no evidence raising such issue. An unavoidable accident is one that occurs without having been proximately caused by the negligence of any party to the event. If the evidence does not raise the issue that something other than the negligence of a party to the event caused the injury, an issue on unavoidable accident should not be submitted. Dallas Railway & Terminal Co. v. Bailey, 1952, 151 Tex. 359, 250 S.W.2d 379; Hicks v. Brown, 1941, 136 Tex. 399, 151 S.W.2d 790; Hodges on Special Issue Submission in Texas, Sec. 19, p. 51.

Appellant contends that appellee stooped because of some kind of optical illusion as to the location of the pipes. It is our view that the evidence shows a miscalculation on the part of appellee rather than an optical illusion. The pipes were a little farther away from the steps than appellee thought as he undertook to climb the same. His act in stooping was conduct on his part going to the matter of contributory negligence and not unavoidable accident. See Harrison v. King, Tex.Civ.App., 296 S.W.2d 344, writ ref., n. r. e.; Lubbock Bus Co. v. Pearson, Tex.Civ.App., 266 S.W.2d 439, writ ref., n. r. e.; McCarthy Oil & Gas Corp. v. Cunningham, Tex.Civ.App., 255 S.W.2d 368, writ ref., n. r. e.; Good v. Born, Tex.Civ.App., 197 S.W.2d 589, writ ref., n. r. e.

It was not error for the court to refuse to give an instruction on aggravation in connection with Special Issue No. 19, the damage issue. Dr. Hucherson, who examined appellee on several occasions, testified that he found "Chondromalacia" present in appellee's knee and that in his opinion there was a causal relationship between that condition and the injury in question. He based his opinion upon the history given him by appellee that he had had no trouble of any kind until he struck his knee, and upon the surgical report that the condition was of traumatic origin. There is no evidence of probative force in the record that any other possible cause had in fact produced or aggravated appellee's injury.

Judgment affirmed.

### On Motion for Rehearing

Appellant, in its motion for rehearing, contends that this Court erred in holding it was not reversible error for the trial court to fail to submit as the first issue in the charge the inquiry as to whether appellee bumped his knee on a step of the cross-walk or on a cross-pipe. It is our view that appellee's testimony at the trial and by deposition as to how the injury occurred, as well as his reports to the United States Health Service and his doctor, are clear and positive, and that there is no evidence of probative force or circumstances discrediting such testimony. This fact brings it within the exception recognized in Owen Development Co. v. Calvert, 1957, 157 Tex. 212, 302 S.W.2d 640.

The unsworn statements which were inserted in type on the forms entitled "Request for Master's Certificate" and "Report of Personal Injury", prepared by some unknown person, but evidently one in the employ of appellant or its insurance carrier, containing the statement to the effect that appellee stated he bumped his knee on a cross-pipe, are not such as to discredit the clear and positive testimony of appellee, and especially so since appellee denied he made such statements and appellant failed to contradict him by either such "unknown party" or by the master of the ship who signed the "Report of Personal Injury", and who testified at the trial. Moreover, to Special Issue 10–A the jury found by a preponderance of the evidence that appellee did not bump his knee on a cross-pipe on the main deck at a location other than the structure [walk-way] in question.

Motion for rehearing overruled.