**Joseph W. McGRODER**

**v.**

**MOORE–McCORMACK LINES, INC.**

**Civ. A. No. 40065.**

United States District Court
E. D. Pennsylvania.

May 19, 1969.

Freedman, Borowsky & Lorry, by Robert C. Daniels, Philadelphia, Pa., for plaintiff.

Clark, Ladner, Fortenbaugh & Young, by John A. McMenamin, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

JOSEPH S. LORD, III, District Judge.

### I.

### FINDINGS OF FACT .

Plaintiff, Joseph W. McGroder, was a seaman and on or about July 26, 1965 signed on the SS MORMACCOVE as an ordinary seaman. His duties consisted of two hours of steering, two hours maintenance during the day, and two hours steering, one hour lookout and one hour standby during the night.

On or about August 10, 1965, at about 11:00 p. m. the plaintiff left the messroom and proceeded to the main deck on the starboard side. His intention was to proceed across the foredeck to the fo'c'sle head in order to stand watch. The night was dark and wet. There was a normal sea but the deck was wet from the moisture in the atmosphere. Deck cargo was stowed on the foredeck to a height of approximately four feet. The stowage began just aft of the aftercoaming of the No. 1 hatch and extended to about the aftercoaming of the No. 3 hatch.

A catwalk had been erected over the deck cargo on the starboard side, access to which was provided by a wooden ladder at the aft end of the catwalk. The catwalk was composed of 2 x 4's and 2 x 10's; it was approximately 3 feet wide, constructed of new lumber with handrails on each side. At the forward end of the stow there was no ladder, but instead a ramp, with 2 x 4's for cleats, which extended from the top of the stow to the deck. This ramp was not provided with handrails and was wet from the moisture in the air. It was the only way available to descend from the top of the stow to the deck.

As plaintiff stepped on the ramp his foot went from under him. He was unable to catch himself and he fell to the starboard side of the stow landing on the main deck between the bulwark and the ramp. Plaintiff was watching where he was going, was walking carefully, but there was nothing he could have done to avoid the accident once he slipped on the wet deck and was confronted with an absence of hand rails.

Plaintiff struck his head on a stanchion, his body and buttocks hit the bulwark, his left shin was bleeding, he had a cut over the right eye and bruises on his buttocks. He finally came to rest on his chest. Following the accident the plaintiff went to the Chief Mate, where his leg and eye were bandaged and he was given pills for pain. He knocked off watch, went to bed and was off duty for a few days.

After the plaintiff resumed his watches he continued to have pain in the lower back. At Rotterdam the plaintiff was given light duty by the company doctor.

Plaintiff continued to work but his back bothered him continuously. The pain increased and began to run down the back of the left leg into his toes. His leg pained and his foot became numb. This intensification and radiation of pain began about three weeks after the accident. When the vessel arrived in New York plaintiff received a Master's Certificate for the U. S. Public Health Service which he visited in New York. He was referred to Philadelphia and by Philadelphia to the Marine Hospital in

Baltimore. He was hospitalized there from September 23 to October 12, 1965. He was given a bed board and pain killers and x-rays were taken.

After his discharge plaintiff returned as an outpatient from November 9 to December 9, 1965, when he was given a fit-for-duty slip. He had, however, the same complaints and did not return to duty on the advice of the Public Health doctor.

Plaintiff obtained employment with Publicker Industries where he worked from October 10 to November 10, 1965, earning a total of $179.05.

Following November of 1965 plaintiff was unable to work until he returned to sea in April of 1966 aboard the SS EXPORT CHALLENGER. In July, 1966, a doctor in Aden advised plaintiff he should not go to sea because of his back. Plaintiff's next ship was the SS DEFENDER, upon which he shipped as an able-bodied seaman. However, because of his constant back pains the plaintiff was compelled to leave the ship in Suez and return home.

Upon his return to Philadelphia, plaintiff went to U. S. Public Health Service where he had complaints of stomach upsets and the same complaints of pain in his back radiating down the back of the left leg.

Plaintiff next served as a boatswain on the SS EXPEDITER from August 24, 1966 to December 1966. As boatswain, although he had the opportunity to rest more than an able-bodied seaman, he nevertheless continued to have back pains.

Plaintiff next signed on the SS EVERGREEN STATE on April 9, 1967 as an able-bodied seaman. He served on that vessel for only 20 days and was compelled to leave in Galveston where he was hospitalized by the U. S. Public Health Service.

Plaintiff next shipped on the SS AFRICAN LIGHTNING as an able-bodied seaman from April 21, 1967 to June 19, 1967. During the voyage on the AFRICAN LIGHTNING the plaintiff's symptoms increased and when he left the vessel he stopped shipping because he could no longer do the work on account of his back.

In the summer of 1968 from May through August plaintiff worked for Perkins Sling Assembly Co. but his back continued to bother him and he had to take time off. He earned $100 a week but eventually quit because of his back.

At the present time plaintiff has pain every day in his back running down the back of his leg into his foot. Some days the pain is greater than on others.

Plaintiff has not worked since August of 1968.

As a result of the accident plaintiff suffered a laceration of the right eye; lacerations of the left shin and a herniated nucleus pulposis at the L5–S1 level. As a result of the accident plaintiff continues to suffer pain in his back with radiation and continues to be unable to do any heavy work of any kind.

■■ Plaintiff is at present 51 years of age, having been born February 15, 1918, and having a life expectancy of 23.1 years. He has an 8th grade education with no technical training and has worked either as a longshoreman or a seaman his entire life, starting at age 15 or 16. In 1964, plaintiff's last full year of work, he earned $8,071.32. Plaintiff is now totally and permanently disabled from performing the work of a seaman, as a result of which his earning capacity has been permanently impaired. The plaintiff's present condition is a direct result of the accident of August 10, 1965, which was caused by the negligence of defendant and the unseaworthiness of its vessel.

■■ We find that, since August 1968, plaintiff has lost 9 months earnings at $672 per month, for a total of $6,048. We further find that from September 3, 1965 and April 5, 1966, plaintiff earned $179.05, and that he suffered during that period a net loss of $4,524.95. We further find that while plaintiff is permanently and totally disabled from doing seaman's work, he is not disabled from

all work and that his earning capacity has been diminished by 50%. He has a work expectancy of 14 years. The present value of his future loss of earning capacity at 3½% is $43,600. Plaintiff is entitled to compensation for past and future pain and suffering in the amount of $10,000.

The foregoing shall be deemed our findings of fact.

## II.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter.

■ 2. Defendant has a non-delegable duty to exercise reasonable care to provide plaintiff with a reasonably safe place to work.

■ 3. Defendant has a duty to provide a vessel and all appurtenances which are reasonably fit for the purpose intended.

4. Defendant was negligent in failing to anticipate that at sea the catwalk and ramp were likely to become wet and slippery and in failing to provide handrails for those using the ramp, thereby failing to exercise reasonable care to provide plaintiff with a reasonably safe place to work. *Cf.* Snipes v. Pure Oil Company, 186 F.Supp. 373 (W.D.La. 1960).

5. Because of the absence of handrails, the ramp, an appurtenance of the vessel, was not reasonably fit for the intended purpose, thereby causing an unseaworthy condition. Continental Oil Co. v. Lindley, 382 S.W.2d 296 (Tex.Civ. App.1964); *cf.* Krey v. United States, 123 F.2d 1008 (C.C.A. 2, 1941); Trenkle v. Compagnie Generale Transatlantique, 179 F.Supp. 795 (S.D.Cal., 1960).

■ 6. Defendant's negligence and the unseaworthiness of the vessel were the proximate cause of plaintiff's injuries.

■ 7. Plaintiff was not guilty of contributory negligence.

8. Plaintiff is entitled to judgment in the amount of $64,172.95.